**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| LING HUANG, *Petitioner*, v. ERIC H. HOLDER, JR., Attorney General, *Respondent*. | No. 09-72837 Agency No. A095-024-123 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 5, 2013—San Francisco, California

Filed March 12, 2014

Before: Jerome Farris, Ferdinand F. Fernandez,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

## SUMMARY[*]

### Immigration

The panel denied a petition for review of the Board of Immigration Appeals' denial of an application for asylum, withholding of removal, and protection under the Convention Against Torture.

The panel held that the evidence did not compel the conclusion that petitioner was credible, where the IJ's well-supported demeanor finding was entitled to special deference, and the IJ appropriately considered the record as a whole and the totality of the circumstances. The panel held that the remaining evidence in the record did not compel the conclusion that petitioner met her burden of proof for relief.

### COUNSEL

Anders L. Johnson (argued), Law Offices of Vaughan de Kirby, San Francisco, California, for Petitioner.

Tony West, Assistant Attorney General; Michelle Gorden Latour, Assistant Director; Tracie N. Jones and Joseph A. O'Connell (argued), Attorneys, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington D.C., for Respondent.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

IKUTA, Circuit Judge:

Ling Huang, a native and citizen of China, petitions for review of the denial of her application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) by the Board of Immigration Appeals (BIA). Because the record in this case does not compel the conclusion that Huang's testimony was credible and persuasive, we affirm the immigration judge's determination that Huang failed to carry her burden of proving her eligibility for relief.

I

Huang entered the United States on May 11, 2006 on a student visa, and applied for asylum and withholding of removal on April 12, 2007. Huang conceded her inadmissibility, and appeared before an immigration judge (IJ) for a merits hearing on January 10, 2008.

Huang testified as follows at the merits hearing. While attending an underground Christian "house church" in China, she was arrested and taken to the police station. While in police custody, a female officer pulled her hair, pushed her to the ground, and kicked her. Huang was then placed in a cell and forced to perform manual labor, such as cleaning toilets and moving bricks. After three days, Huang's family bailed her out of jail for 8,500 RMB and she returned home. She provided a bail receipt from China for the crime of "violating the management of public order with a mob," but it did not reference her participation in a house church or otherwise corroborate Huang's testimony. As a condition of her

release, Huang signed a document promising that she would not continue to participate in underground Christian activities. She ceased attending underground churches after her arrest, but continued to practice Christianity through private prayer.

Following this incident, Huang secured a student visa to the United States with the help of a private agency specializing in foreign study trips. Upon her arrival in the United States, Huang studied at Merced College for six months, but ended her studies after running out of money to pay tuition.

Huang claimed that she continued to practice Christianity while in the United States. She stated she was baptized on April 8, 2007, and provided photographs which she claimed showed her baptismal ceremony, which was performed by another member of the church. According to her testimony, Huang then began to attend a different church in Modesto, California in August 2007, but stopped going after a few months in order to help her uncle on the weekends. Huang did not produce a baptismal certificate or any other evidence corroborating her church attendance in either the United States or in China. Huang testified that she observed Easter and Christmas, and she recited the Lord's Prayer and other Christian prayers.

In a decision issued on January 10, 2008, the IJ found that Huang's testimony was not credible. She noted two reasons for this conclusion. First, the IJ found that Huang's demeanor undermined her credibility, noting that Huang paused frequently while testifying "as if to assess the impact of the answer she provided." Further, the IJ found that Huang's testimony was "extremely superficial," and "could easily

have been memorized." Second, the IJ noted that much of Huang's testimony was unpersuasive and not supported by reasonably obtainable corroborating evidence. While the photographs and bail bond receipt provided some evidence that Huang was a Christian who had participated in a home church, they were insufficient to prove that she was eligible for asylum or other relief. Because Huang's testimony was not credible, the IJ held the evidence in the record was "insufficient to meet [Huang's] burden of proof" that she was eligible for asylum or withholding. In addition, the IJ denied her protection under CAT because there was no evidence that Chinese authorities would torture Huang on her return to China.

Huang appealed the denial of her claim to the BIA, which affirmed the IJ's ruling in full. Huang then filed a timely petition for review on September 3, 2009.

II

We have jurisdiction under 8 U.S.C. § 1252 to review final orders of removal. *Li v. Holder*, 656 F.3d 898, 901 (9th Cir. 2011). We review "denials of asylum, withholding of removal, and CAT relief for substantial evidence and will uphold a denial supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Garcia Milian v. Holder*, — F.3d —, No. 09-71461, 2014 WL 555138, at *2 (9th Cir. Feb. 13, 2014) (quoting *Kamalyan v. Holder*, 620 F.3d 1054, 1057 (9th Cir. 2010)) (internal quotation marks omitted). The BIA's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). In other words, in order to reverse the BIA, "we must determine 'that the evidence not only *supports* [a

contrary] conclusion, but *compels* it—and also compels the further conclusion' that the petitioner meets the requisite standard for obtaining relief." *Garcia-Milian*, 2014 WL 555138, at \*2 (alterations in original) (quoting *INS v. Elias–Zacarias*, 502 U.S. 478, 481 n.1 (1992)). Where, as here, the BIA adopts the IJ's decision and adds some of its own analysis, the panel reviews both decisions. *Kaur v. Ashcroft*, 388 F.3d 734, 736 (9th Cir. 2004).

To qualify for asylum, an applicant must show that she is a "refugee," defined as one who "is unable or unwilling to return to [her home country] . . . because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The bar for withholding of removal is higher; an applicant "must demonstrate that it is more likely than not that he would be subject to persecution" on one of the grounds listed above. *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001) (internal quotation marks omitted). Finally, CAT protects applicants who show that they are "more likely than not to be tortured in the country of removal." *Zheng v. Holder*, 644 F.3d 829, 835 (9th Cir. 2011) (internal quotation marks omitted).

An applicant bears the burden of proving eligibility for asylum, withholding of removal, and CAT protection. 8 U.S.C. § 1158(b)(1)(B); *see also* 8 U.S.C. § 1231(b)(3)(C); *Zheng*, 644 F.3d at 835.

III

Because Huang's application for asylum was made after May 11, 2005, the REAL ID Act of 2005 applies. Pub. L. No. 109-13, 119 Stat. 231 (2005). This Act modified the

standards governing our review of an agency's credibility determinations. *See* 8 U.S.C. § 1158(b)(1)(B).

Under the REAL ID Act, there is no presumption that an applicant for relief is credible, and the IJ is authorized to base an adverse credibility determination on "the totality of the circumstances" and "all relevant factors." 8 U.S.C. § 1158(b)(1)(B)(iii)[1]; *see also Ren v. Holder*, 648 F.3d 1079, 1084 (9th Cir. 2011) ("Under the REAL ID Act, the IJ may base an adverse credibility determination on any relevant factor that, considered in light of the totality of the circumstances, can reasonably be said to have a bearing on a petitioner's veracity." (internal quotation marks omitted)). Among other factors, an IJ may base an adverse credibility determination on the "demeanor, candor, or responsiveness"

---

[1] Section 1158(b)(1)(B)(iii) states in relevant part:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstance under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).

of the applicant. 8 U.S.C. § 1158(b)(1)(B)(iii). "All aspects of the witness's demeanor—including the expression of his countenance, how he sits or stands, whether he is inordinately nervous, his coloration during critical examination, the modulation or pace of his speech and other non-verbal communication—may convince the observing trial judge that the witness is testifying truthfully or falsely." *Shrestha v. Holder*, 590 F.3d 1034, 1042 (9th Cir. 2010) (internal quotation marks omitted). The IJ may also consider the inherent plausibility of the applicant's account, its consistency with the applicant's other written or oral statements, other evidence of record, "or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii).

In light of this statutory language, we have concluded that "the REAL ID Act requires a healthy measure of deference to agency credibility determinations." *Shrestha*, 590 F.3d at 1041; *see also Jibril v. Gonzales*, 423 F.3d 1129, 1138 n.1 (9th Cir. 2005) (explaining that under the REAL ID Act, "only the most extraordinary circumstances will justify overturning an adverse credibility determination"). This deference "makes sense because IJs are in the best position to assess demeanor and other credibility cues that we cannot readily access on review." *Shrestha*, 590 F.3d at 1041. "[A]n immigration judge alone is in a position to observe an alien's tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence." *Id.* (quoting H.R. Rep. No. 109-72, at 167 (2005), *reprinted in* 2005 U.S.C.C.A.N. 240, 293) (internal quotation marks omitted). By virtue of their expertise, IJs are "uniquely qualified to decide whether an alien's testimony has about it the ring of truth." *Id.* (internal quotation marks omitted).

The need for deference is particularly strong in the context of demeanor assessments. Such determinations will often be based on non-verbal cues, and "[f]ew, if any, of these ephemeral indicia of credibility can be conveyed by a paper record of the proceedings and it would be extraordinary for a reviewing court to substitute its second-hand impression of the petitioner's demeanor, candor, or responsiveness for that of the IJ." *Jibril*, 423 F.3d at 1137. Indeed, even before the enactment of the REAL ID Act, we recognized the need to give "special deference to a credibility determination that is based on demeanor," *Singh-Kaur v. INS*, 183 F.3d 1147, 1151 (9th Cir. 1999) (internal quotation marks omitted), because the important elements of a witness's demeanor that "may convince the observing trial judge that the witness is testifying truthfully or falsely" are "entirely unavailable to a reader of the transcript, such as the Board or the Court of Appeals." *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 662 (9th Cir. 2003) (internal quotation marks omitted). The same principles underlie the deference we accord to the credibility determinations of juries and trial judges. *See, e.g.*, *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000) ("Because determinations of impartiality may be based in large part upon demeanor, this court typically accords deference to the district court's determinations.").

Despite our broad deference to the finder of fact's observations, we preserve meaningful appellate review of agency decisions, *see* 8 U.S.C. § 1252(a)(2)(D), by requiring the agency "to provide specific instances in the record that form the basis of the agency's adverse credibility determination," *Shrestha*, 590 F.3d at 1042. "[T]he IJ's demeanor findings should specifically point out the noncredible aspects of the petitioner's demeanor." *Id.* For example, "[t]o support an adverse credibility determination

based on unresponsiveness, the BIA must identify particular instances in the record where the petitioner refused to answer questions asked of him." *Id.* (alteration in original) (quoting *Singh v. Ashcroft*, 301 F.3d 1109, 1114 (9th Cir. 2002) (citation omitted)).

IV

On appeal, Huang contends that the IJ erred in making an adverse credibility determination based on her demeanor because the IJ's demeanor findings were too general and the IJ failed to identify any specific instances of non-verbal conduct supporting the adverse credibility finding.

We disagree. The IJ stated that she "carefully observed [Huang's] demeanor while she was on the witness stand." In explaining one reason why Huang's demeanor "was troubling to the Court," the IJ pointed out that Huang "hesitated frequently as if to assess the impact of the answer she provided." The transcript of Huang's testimony documents a pattern of long pauses after certain questions, followed by an explanation or excuse. For example, when asked by the government if she ever had a baptismal certificate, the transcript notes that there was "[n]o audible response." Only after the question was repeated did Huang explain that she could get the certificate if she needed it, but thought the photos she provided were sufficient.

Later in the hearing, the IJ asked Huang why she had not corroborated her attendance at a California church with a letter or other documentary evidence. The transcript states that Huang provided "[n]o audible response," and the IJ stated "Let the record reflect there's a long pause, as there have been several times with the respondent's answers."

Again, only when the question was repeated, did Huang respond "Personally, I think if my heart is genuinely with the God, following the God and everything, the piece of paper will not, will not show everything."

Finally the IJ asked several questions to determine why Huang had brought almost no corroborating evidence to court.

> Q: Well, didn't your attorney talk to you about what was needed to prepare for the case today?
>
> A: (No audible response.)
>
> * * *
>
> Q: What are you thinking about? That's a yes or no question.
>
> A: (No audible response.)
>
> Q: Did your attorney talk to you about what would be expected in court?
>
> A: Yes, he did.
>
> Q: Then your baptismal certificate and letters from people in the church would have been obvious documents that should have been presented. I don't understand why you seem so surprised that the Court would like to see some things like that.

> A:  I, I thought that if I could provide the
> photo showing the procedure of the baptism,
> it would be the same.  This was my personal
> thought of course.

This documentation of Huang's non-responsive hesitations is sufficient to support the IJ's demeanor finding, *see Shrestha*, 590 F.3d at 1042, which in turn sustains the IJ's adverse credibility determination.

In making this adverse credibility determination, the IJ complied with the statutory requirement of reviewing the record as a whole and discussing the "totality of the circumstances" underlying the adverse credibility determination. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) (describing factors on which the IJ may base a credibility determination in light of "the totality of the circumstances, and all relevant factors"). First, the IJ appropriately considered "relevant evidence that tends to contravene a conclusion that a given factor undermines credibility." *Shrestha*, 590 F.3d at 1044. The IJ noted that Huang gave a plausible explanation for the inconsistencies between her testimony at the initial asylum interview and her testimony at the merits hearing. Accordingly, the IJ did not consider Huang to be less credible on account of those inconsistencies. Similarly, the IJ explained that while Huang's "knowledge of Christian faith was extremely superficial and vague . . . she was able to recite at least one well-known Christian prayer." The IJ therefore did not view this aspect of Huang's testimony as weighing against her credibility.

Further, the IJ not only considered Huang's demeanor, but also indicated that Huang's testimony was not persuasive or sufficiently specific to carry her burden of proof. *See*

8 U.S.C. § 1158(b)(1)(B)(ii) (requiring an applicant to "satisfy the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee.") The IJ stated that Huang's testimony was "extremely superficial" and "could easily have been memorized," and therefore did "little to bolster her veracity." We have held that the IJ may consider the "level of detail of the claimant's testimony to assess credibility." *Shrestha*, 590 F.3d at 1040. Huang's testimony here is not so thorough and comprehensive as to compel a contrary conclusion.

Finally, the IJ also noted that Huang's testimony was not supported by reasonably obtainable corroborating evidence. *Cf. Aden v. Holder*, 589 F.3d 1040, 1045 n.13 (9th Cir. 2009) ("It is hard to imagine a civil trial in which the party bearing the burden of proof asked the trier of fact to take his uncorroborated word for a proposition reasonably subject to corroboration."). Despite being represented by counsel and acknowledging that her lawyer had told her how to prepare for her case, Huang did not provide documentary evidence supporting her claim that she was a practicing Christian other than the photographs and bail bond receipt. These items do not provide persuasive documentation of Huang's story.

Because the IJ's well-supported demeanor findings are entitled to special deference, *Singh-Kaur*, 183 F.3d at 1151, and the IJ appropriately considered the record as a whole and "the totality of the circumstances," 8 U.S.C. § 1158(b)(1)(B)(iii), we are not compelled to conclude that Huang was credible. We therefore defer to the IJ's adverse credibility determination, and must give no weight to Huang's testimony. The remaining evidence in the record does not compel us to overturn the IJ's determination that

Huang failed to carry her burden of proving eligibility for asylum.

Because Huang failed to carry her burden for asylum, we also hold that the record does not compel the conclusion that she meets the more stringent standard for withholding of removal. *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003). Nor does the record compel the conclusion that Huang is eligible for protection under the Convention Against Torture. "[S]he has not demonstrated that, more likely than not, she will be tortured at the instigation of, or with the acquiescence of" the Chinese government. *Silaya v. Mukasey*, 524 F.3d 1066, 1073 (9th Cir. 2008). Accordingly, we deny her petition for review.

**PETITION DENIED**.