**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

YALI WANG,

*Petitioner*,

v.

JEFFERSON B. SESSIONS III, Attorney General,

*Respondent*.

No. 14-72469

Agency No.
A205-336-290

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 17, 2017[*]
San Francisco, California

Filed July 3, 2017

Before: Dorothy W. Nelson and Sandra S. Ikuta, Circuit
Judges, and J. Michael Seabright,[**] Chief District Judge.

Opinion by Judge Ikuta

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable J. Michael Seabright, Chief United States District
Judge for the District of Hawaii, sitting by designation.

## SUMMARY***

---

### Immigration

The panel denied a petition for review of the Board of Immigration Appeals' decision affirming an immigration judge's denial on adverse credibility grounds of an application for asylum, withholding of removal, and protection under the Convention Against Torture.

The panel held that substantial evidence supported the IJ's adverse credibility determination based on anomalies in petitioner's supporting documentation, petitioner's vague testimony, and her failure to submit sufficient reliable corroborating evidence.

The panel rejected petitioner's contention that the IJ erred by failing to make an affirmative finding that she submitted forged documentation, explaining that the applicant has the burden to satisfy the trier of fact by offering credible and persuasive evidence, and that the IJ may consider all relevant factors, including "the inherent plausibility" of the applicant's account.

The panel held that the IJ was under no obligation under *Ren v. Holder*, 648 F.3d 1079 (9th Cir. 2011), to provide petitioner notice and an opportunity to present additional corroborating evidence, because petitioner failed to meet her initial burden of presenting credible testimony. The panel further held that when an IJ has considered the corroborating

---

*** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

evidence submitted, but deemed that evidence insufficient, the IJ need not afford the applicant an opportunity to provide additional evidence.

## COUNSEL

Michael A. Rohr, West Covina, California, for Petitioner.

Andrew Oliveira, Trial Attorney; Carl McIntyre, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

IKUTA, Circuit Judge:

Yali Wang, a citizen and native of China, petitions for review of the denial of her application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). After reviewing Wang's testimony and the evidence in the record, the Immigration Judge (IJ) made an adverse credibility determination and concluded that Wang had not carried her burden of proving eligibility for relief. Because the IJ's adverse credibility determination was supported by substantial evidence, and because the IJ had no obligation to give Wang an opportunity to provide additional evidence, we deny the petition.

I

Wang legally entered the United States on December 5, 2011, but overstayed the six-month period authorized by her tourist visa. She timely applied for asylum, withholding of removal, and CAT relief. The IJ held an initial hearing on November 27, 2012, at which Wang conceded removability, and a second hearing on January 3, 2013 to consider her application for relief from removal.

At this hearing, Wang testified as follows. She was born on November 26, 1968, and married her husband Gao Lianjun on April 23, 1991. She gave birth to a son in February 1992, after which her employer required her to have an intrauterine contraceptive device (IUD) inserted, consistent with the one-child policy then in effect. In March 2007, after a routine gynecological exam showed that she was pregnant again, Wang was forced to have an abortion (during which her first IUD was removed) and to have a second IUD inserted. Several years after these procedures, in 2011, Wang obtained a tourist visa to visit the United States. After securing her visa but before leaving China, she had the second IUD removed at a private clinic. Wang also provided several documents to corroborate this testimony, including the marriage certificate issued to her, the marriage certificate issued to her husband Gao Lianjun, the marriage application that she and her husband had completed, and certain medical records regarding her abortion.

The IJ identified a number of discrepancies in Wang's documentary evidence. The two marriage certificates (one issued to Wang and one issued to Gao Lianjun) and the marriage application contained several anomalies. Although Wang was born on November 26, 1968, her marriage

certificate showed her date of birth as November 20, 1968, with the "20" scratched out and "26" written above it. An erroneous character in her name had also been scratched out with the correct character written above it, and Gao Lianjun's date of birth had also been scratched out and replaced. Wang's application for a marriage certificate also erroneously listed her birthday as November 20, 1968, as did Gao Lianjun's marriage certificate. The IJ also compared the photograph of Gao Lianjun on Wang's marriage certificate, to his photograph on his marriage certificate, and questioned why the two were different. It appeared that the photograph of Gao Lianjun on Wang's marriage certificate had been pulled off the document and replaced with a different photograph.

When questioned by the IJ about these discrepancies, Wang initially explained that "the staff, from the department" had "actually made a mistake" in filling out her birthday on the marriage application. After the IJ noted that the application looked like it had been filled out by Wang and her husband, Wang conceded that "[m]aybe I wrote it wrong and then they copied it wrong." Wang also explained the differences between the photographs on the two marriage certificates. According to Wang, after an argument with Gao Lianjun, she tore his original photograph out of her marriage certificate, but then later replaced it with a more recent photograph.

The IJ also raised concerns about Wang's medical records. Wang testified that Gao Lianjun obtained her records from the hospital in China, but could not explain how he obtained them and provided them to her in the United States; she merely stated, "I didn't ask him." Wang also submitted a surgery record to corroborate her claims that she

had been forced to have an abortion in March 2007 after her first IUD failed. However, the IJ noted that the record had not been fully completed, with blanks left for information such as "contraceptive method before pregnancy" and "failure of contraceptive control." Wang also submitted a statement from Gao Lianjun describing the abortion, but the statement was unsworn. Further, although Wang claimed she was forced to have IUDs inserted on two occasions, Wang did not provide any medical records relating to these procedures. In response to the IJ's questions about her failure to do so, Wang replied that "I don't know that I need[ed] to provide this." Wang also did not provide evidence supporting her claim that her second IUD had been removed at a private clinic. She stated that she could not recall the date of the procedure or the name of the clinic at which the procedure took place, and that she did not receive any documentation from the clinic because the procedure was considered illegal. Finally, the IJ asked Wang why she had not submitted a "medical book" recording her medical history. While Wang's attorney suggested that the lack of a medical book could be attributable to different record-keeping standards across different regions of China, Wang first testified that she had not kept the records, then testified that she misplaced them, and finally testified that she "didn't really try to save them."

At the conclusion of the hearing, the IJ determined that Wang was not credible. The IJ stated that Wang gave equivocal testimony about the reasons for errors in the marriage records, which raised credibility concerns. Further, the IJ found Wang's testimony regarding the critical events underlying her claims for relief, such as when and where the IUDs were inserted, to be "very vague." Nor did the IJ find that the documents submitted by Wang adequately

corroborated her testimony. Among other issues, the IJ noted that there was no evidence corroborating the legitimacy of Wang's medical records; for instance, there was no chain of custody for the records, no certificate from the hospital attesting to the accuracy of those records, and no explanation regarding how Wang's husband was able to obtain them. The IJ discounted Gao Lianjun's written testimony because it was not notarized, and moreover, the IJ was uncertain that Gao Lianjun was Wang's husband given the multiple discrepancies in the marriage records. Further, the medical records did not corroborate Wang's testimony that she had ever been forced to use an IUD, let alone twice. In light of these and other issues, the IJ determined that Wang had not carried her burden of establishing eligibility for asylum and withholding of removal. The IJ also rejected Wang's CAT claim, which relied on the same evidence. The Board of Immigration Appeals dismissed Wang's subsequent appeal.

II

We have jurisdiction under 8 U.S.C. § 1252 to review final orders of removal. *Ling Huang v. Holder*, 744 F.3d 1149, 1152 (9th Cir. 2014). "We review 'denials of asylum, withholding of removal, and CAT relief for substantial evidence and will uphold a denial supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Id.* (quoting *Garcia-Milian v. Holder*, 755 F.3d 1026, 1031 (9th Cir. 2014)). "We review factual findings, including adverse credibility determinations, for substantial evidence." *Garcia v. Holder*, 749 F.3d 785, 789 (9th Cir. 2014). "Factual findings 'are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). That is, "[t]o reverse [such a] finding we must find that the evidence

not only supports [a contrary] conclusion, but compels it."
*Rizk v. Holder*, 629 F.3d 1083, 1087 (9th Cir. 2011)
(emphasis omitted) (second and third alterations in original)
(quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1
(1992)).

Because Wang filed her application for relief after May
11, 2005, the REAL ID Act of 2005, Pub. L. No. 109-13, 119
Stat. 231, controls our review. *See Ling Huang*, 744 F.3d at
1152. Under the REAL ID Act, "[t]here is no presumption of
credibility." 8 U.S.C. § 1158(b)(1)(B)(iii); *see also id.*
§§ 1229a(c)(4)(C), 1231(b)(3)(C). Rather, "[c]onsidering the
totality of the circumstances, and all relevant factors, a trier
of fact may base a credibility determination on the demeanor,
candor, or responsiveness of the applicant," as well as "the
inherent plausibility" of the applicant's account and the
consistency between the applicant's statements and other
evidence in the record. *Id.* § 1158(b)(1)(B)(iii). These
determinations may be made "without regard to whether an
inconsistency, inaccuracy, or falsehood goes to the heart of
the applicant's claim." *Id.*

In evaluating Wang's testimony in this case, the IJ
considered Wang's candor, her responsiveness, and the level
of detail in her testimony, all of which are relevant factors in
evaluating the totality of the circumstances. *Shrestha v.
Holder*, 590 F.3d 1034, 1040 (9th Cir. 2010). The IJ also
considered the other evidence of record, including the
documents submitted by Wang to corroborate her claims, and
adequately described her concerns regarding the provenance
and reliability of those documents. Given the "healthy
measure of deference to agency credibility determinations"
required by the REAL ID Act, *id.* at 1041, we conclude that

the IJ's adverse credibility determination here was supported by substantial evidence.

On appeal, Wang argues that the IJ erred in her adverse credibility ruling because she relied too heavily on her conclusion that Wang's documents were unreliable, failed to identify specific inconsistencies in Wang's testimony, and failed to give Wang an opportunity to provide additional evidence. These arguments misapprehend the IJ's duty under the REAL ID Act to assess credibility.

First, Wang argues that the IJ erred by rejecting the reliability of her marriage certificates and medical records without making a specific finding that these records were forgeries. This argument fails, because the IJ has no obligation to determine whether the documents submitted by a petitioner are forgeries; rather, the petitioner has the burden to satisfy the trier of fact by offering credible and persuasive evidence. 8 U.S.C. § 1158(b)(1)(B)(ii). The IJ may consider all relevant factors, *id.* § 1158(b)(1)(B)(iii), including "the inherent plausibility" of the petitioner's account, *Ling Huang*, 744 F.3d at 1153.

Relying on a pre-REAL ID Act case, *see Yeimane-Berhe v. Ashcroft*, 393 F.3d 907 (9th Cir. 2004), Wang argues that even if her records were forgeries, the IJ erred in making an adverse credibility determination without first finding that Wang knew of the records' falsity. We reject this argument. In *Yeimane-Berhe*, the IJ determined that the petitioner was not credible based solely on one piece of evidence: the government's conclusion that a medical certificate submitted by the petitioner was fraudulent. *Id.* at 908. *Yeimane-Berhe* acknowledged that the use of such a fraudulent document might, in light of the totality of the record, "lend support to an

adverse credibility finding," but held that the IJ's finding was not supported by substantial evidence where the petitioner's testimony "was corroborated by other testimony and evidence, nothing else in the record suggests she is not credible, and there is no evidence indicating that she knew the document was fraudulent." *Id.* at 911. Even assuming we would have reached this conclusion after the REAL ID Act was enacted, *Yeimane-Berhe* is not applicable to the facts of this case. Unlike *Yeimane-Berhe,* the IJ here based her determination on a range of relevant factors, including her perceptions of Wang's demeanor, her observations regarding the vagueness of Wang's testimony, and her thorough review of the documentary evidence that Wang submitted to support her claims, rather than relying on just a single questionable document.

Next, Wang argues that the IJ erred in making an adverse credibility determination because she failed to identify specific inconsistencies in Wang's testimony. This contention also fails, as an IJ may make an adverse credibility determination even in the absence of inconsistencies in the petitioner's evidence or other evidence of record. 8 U.S.C. § 1158(b)(1)(B)(iii). As we have explained, petitioners "do not usually face the disadvantage of an adversary from their home countries presenting impeaching or contradictory testimony," and so "[a]n IJ cannot be required to accept as true any internally consistent story from the asylum seeker." *Singh v. Holder*, 638 F.3d 1264, 1273 (9th Cir. 2011). A consistent story does not "compel acceptance of credibility." *Id.* Rather, the IJ may "base a credibility determination" on "the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account," or "any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). Here, the IJ adequately identified

problems with Wang's testimony and documentary evidence, and we are not compelled to conclude that Wang was credible.

Finally, Wang asserts that the IJ erred by failing to provide notice that the IJ viewed Wang's documentation as insufficient and failing to give Wang the opportunity to provide additional evidence. Wang bases this argument on our decision in *Ren v. Holder*, 648 F.3d 1079 (9th Cir. 2011), and its progeny. This argument also fails. In *Ren*, we construed the REAL ID Act provision that explains how applicants for relief may sustain their burden of proof, *see* 8 U.S.C. § 1158(b)(1)(B)(ii), and read the statute to include a "sequential analysis." *Ren*, 648 F.3d at 1093. Under this framework, the IJ must first determine whether the petitioner's testimony alone, without corroboration, is sufficient to sustain the petitioner's burden of proving eligibility for relief. *Id.* An applicant sustains the burden of proof "only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii).

If the testimony is not sufficient by itself, then the IJ may require corroborative evidence. *Ren*, 648 F.3d at 1093. "Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii).

If the IJ determines that corroborative evidence is necessary, "the IJ must give the applicant notice of the corroboration that is required and an opportunity either to

produce the requisite corroborative evidence or to explain why that evidence is not reasonably available." *Ren*, 648 F.3d at 1093.

Wang stumbles at the first step in *Ren*'s sequential analysis, because Wang did not satisfy the IJ that her "testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that [she] is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). The second step in *Ren*'s sequential analysis is likewise inapplicable, because the IJ did not request additional evidence to corroborate otherwise credible testimony. Rather, the IJ evaluated the evidence that Wang had submitted, along with "the totality of the circumstances, and all relevant factors," *id.* § 1158(b)(1)(B)(iii), and concluded that Wang was not credible. The IJ therefore had no obligation to give Wang an additional opportunity to bolster her case by submitting further evidence. As we have previously held, an IJ does not "have to engage in multiple iterations of the opportunity to explain." *Rizk*, 629 F.3d at 1088. When an IJ has considered the corroborating evidence provided by an applicant for relief but deemed that evidence insufficient, the IJ need not afford the applicant an opportunity to provide additional evidence. *Cf. id.*

Without Wang's testimony, the remaining evidence in the record is insufficient to carry her burden of establishing eligibility for relief. In the absence of credible testimony, the record does not compel the conclusion that Wang has "been forced to abort a pregnancy or to undergo involuntary sterilization" as part of a "coercive population control program," 8 U.S.C. § 1101(a)(42), and Wang does not argue otherwise. Because Wang cannot establish eligibility for asylum, she necessarily fails to carry the greater burden of

establishing eligibility for withholding of removal. *See Ling Huang*, 744 F.3d at 1156. And while ineligibility for asylum and withholding of removal does not necessarily preclude eligibility for CAT relief, *see Shrestha*, 590 F.3d at 1048, Wang's "'claims under the [CAT] are based on the same statements . . . that the BIA determined to be not credible' in the asylum context," *Singh v. Lynch*, 802 F.3d 972, 977 (9th Cir. 2015) (alterations in original) (quoting *Farah v. Ashcroft*, 348 F.3d 1153, 1157 (9th Cir. 2003)). Therefore, the IJ did not err in concluding that Wang failed to show that "it is more likely than not that . . . she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).

**PETITION DENIED.**