**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

MAR 1 2018

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAMI SHIMA, | No.   15-71411 |
| Petitioner, | Agency No. A206-263-026 |
| v. | |
| JEFFERSON B. SESSIONS III, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 14, 2018
San Francisco, California

Before:  SCHROEDER and RAWLINSON, Circuit Judges, and SESSIONS,**
District Judge.

Sami Shima ("Shima") petitions for review of the Board of Immigration

Appeals' ("BIA") denial of his applications for asylum, withholding of removal,

and relief under the Convention Against Torture ("CAT").

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

Shima bases his applications on his testimony that he had problems with a member of the Albanian mafia named Sokol Daiko. Shima's testimony explained the nature of the problems to be predominately related to money Shima paid Daiko for fraudulent United States visas that were never delivered to Shima. However, Shima also explained that there were political undertones to the situation. Shima supported the Socialist Party in Albania and Daiko supported the Democratic Party.

The BIA agreed with the IJ's denials of Shima's applications and dismissed his appeal. The BIA upheld the denial of Shima's asylum application because Shima was firmly resettled in Greece. Shima lived in Greece from approximately 1997 to 2011 and has a Greek permanent resident card that is valid until June 30, 2018. The BIA upheld the denial of Shima's withholding of removal and CAT protection applications because there was no clear error in the IJ's adverse credibility determination. The BIA noted that Shima was unable to explain why Daiko would search for him in other countries when it was Daiko who owed Shima money. The BIA also explained that Shima's claims of fear were undercut by his return to Albania multiple times following the alleged persecution.

In his petition for review, Shima contends that substantial evidence does not support the findings of the IJ and the BIA (collectively, the "agency") that he was firmly resettled in Greece and that he was not credible.

15-71411

**1.** Aliens are not eligible for asylum if they have "firmly resettled in another country prior to arriving in the United States." 8 U.S.C. § 1158(b)(2)(A)(vi). An alien is firmly resettled if he "entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement." 8 C.F.R. § 1208.15. The Department of Homeland Security ("DHS") bears the initial burden of showing "an offer of permanent resident status, citizenship, or some other type of permanent resettlement." *Maharaj v. Gonzales*, 450 F.3d 961, 973 (9th Cir. 2006) (en banc) (quoting 8 C.F.R. § 208.15). The burden then shifts to the applicant to rebut it. *Id*. "A finding of 'firm resettlement' is a factual determination that [this Court] review[s] under the deferential substantial evidence standard." *Id*. at 967.

Substantial evidence supports the agency's determination that Shima was firmly resettled in Greece prior to coming to the United States. When Shima came to the United States in 2014, he had a current offer to live in Greece for four more years. An offer of permanent residence in a third country is sufficient to establish firm resettlement even if the asylum applicant did not accept the offer. *See Vang v. INS*, 146 F.3d 1114, 1117 (9th Cir. 1998). Thus, DHS carried its initial burden when Shima admitted he had a Greek permanent resident visa and by having Shima's passport containing the Greek permanent resident visa entered into the record. Shima did not meet his burden of rebuttal. Shima initially argued that his permanent status was not actually valid because he had left Greece to live in

Albania from 2011 to 2013; however, he later admitted that he entered Greece using his permanent resident status in February 2014 to sell his car. Shima also argued that he is not safe from Daiko in Greece. The BIA did not discuss this argument, but Shima's lack of credibility and the fact that he spent an entire month in Greece following his alleged issues with Daiko make this unbelievable. Thus, substantial evidence supports the agency's firm resettlement finding, and Shima is therefore ineligible for asylum.

**2.** "Under the REAL ID Act, there is no presumption that an applicant for relief is credible, and the IJ is authorized to base an adverse credibility determination on 'the totality of the circumstances' and 'all relevant factors.'" *Ling Huang v. Holder*, 744 F.3d 1149, 1152–53 (9th Cir. 2014) (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). This Court "review[s] factual findings, including adverse credibility determinations, for substantial evidence." *Yali Wang v. Sessions*, 861 F.3d 1003, 1007 (9th Cir. 2017) (quoting *Garcia v. Holder*, 749 F.3d 785, 789 (9th Cir. 2014)). The agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The agency's adverse credibility determination is supported by substantial evidence. Shima has not put forth a plausible explanation for why Daiko would pursue him all across Europe when it is Daiko who owes Shima money. Further, Shima returned to Albania multiple times after his problems with Daiko began. An

4                                                                    15-71411

applicant's "return to the country in which he or she fears persecution may undercut the [applicant's] claim that his or her fear is objectively well-founded." *Karouni v. Gonzales*, 399 F.3d 1163, 1175 (9th Cir. 2005). Thus, the agency's determination that Shima was not credible is supported by substantial evidence.

The agency correctly reasoned that the adverse credibility determination should result in denials of Shima's applications for withholding of removal and CAT protection. To qualify for withholding of removal based on a clear probability of future persecution, an applicant must "establish by objective evidence that it is more likely than not that [the applicant] will be subject to persecution upon deportation." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987); *see also* 8 C.F.R. § 1208.16(b)(2)–(3). The agency correctly found that Shima's persecution claim lacks veracity, and he therefore cannot satisfy the burdens of proof and persuasion necessary to establish eligibility for withholding of removal. Similarly, Shima is unable to establish eligibility for CAT protection given the adverse credibility determination and the lack of independent supporting evidence. *See* 8 C.F.R. § 1208.16(c)(2); *Shrestha v. Holder*, 590 F.3d 1034, 1048–49 (9th Cir. 2010) (affirming denial of CAT relief based on adverse credibility determination and lack of additional supporting evidence).

For the foregoing reasons, Shima's petition for review of the BIA's decision is **DENIED**.

15-71411



***Shima v. Sessions*, Case No. 15-71411**
**Rawlinson, Circuit Judge, concurring:**

I concur in the result.