NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUL 21 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MIRIAN GRISELDA HERNANDEZ-DE SANTANA; EIBAN ALBERTO SANTANA-HERNANDEZ,

Petitioners,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

No. 16-73955

Agency Nos. A206-900-613
A206-900-614

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 3, 2020
Pasadena, California

Before: PAEZ and CALLAHAN, Circuit Judges, and LYNN,** District Judge.

Partial Concurrence and Partial Dissent by Judge PAEZ

Mirian Hernandez-De Santana (Hernandez), a native and citizen of El

Salvador, entered the United States in March 2015, with her young son, without

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Barbara M. G. Lynn, United States Chief District Judge for the Northern District of Texas, sitting by designation.

being admitted. They were immediately apprehended, placed in removal proceedings, and charged with being present in the United States without admission or parole. Hernandez, through counsel, conceded that she was inadmissible but requested asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

According to Hernandez, if she were returned to El Salvador, she would be persecuted by her husband and by criminal gangs. The Immigration Judge (IJ) found Hernandez to be credible. The IJ accepted Hernandez's proposed particular social group of married women in El Salvador who are unable to leave their relationships but found that Hernandez was not a member of such a group because she had not demonstrated an inability to leave her husband. The IJ also rejected Hernandez's claim of persecution by criminal gangs, noting that the gangs had extorted money from her mother's business, that the extortion threats stopped when her parents came to the United States, and that no one in the family was ever actually harmed by the gang members. The Board of Immigration Appeals (BIA) dismissed Hernandez's appeal, and she filed a timely petition for review with this court. We affirm the agency's denial of relief.[1]

We examine the BIA's "legal conclusions de novo and its factual findings

---

[1] Because the parties are familiar with the facts of this application, we do not discuss them at length here.

for substantial evidence." *Parada v. Sessions*, 902 F.3d 901, 908 (9th Cir. 2018) (quoting *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc)). Substantial evidence review means that we may only reverse the agency's determination where "the evidence compels a contrary conclusion from that adopted by the BIA." *Id.*; *see also INS v. Elias-Zacarias*, 502 U.S. 478, 483 n.1 (1992); *Wang v. Sessions*, 861 F.3d 1003, 1007 (9th Cir. 2017); *Risk v. Holder*, 629 F.3d 1083, 1087 (9th Cir. 2011).

Based on Hernandez's own testimony, the IJ found that that she was able to leave her relationship with her husband. Agreeing with the IJ, the BIA noted:

> [Hernandez] lived apart from her husband in El Salvador on several occasions, neighbors called the police on one occasion and a restraining order was put in place, and once her husband left their home in February 2013, he never returned to live with her again. Moreover, [Hernandez] testified that her husband did not try to prevent her from leaving, and since 2013, he has been in a relationship with another woman and he has another child. In addition to the support she received from the police, [Hernandez] also received the assistance and support of her family who protected her against her husband's actions and allowed her to live with them while she was separated.

Hernandez does not contest any of these underlying facts. Thus, even accepting that domestic abuse may often include a cycle of battering, separation, and reconciliation, we cannot find that the record in this case "compels a contrary conclusion" from the BIA's determination that Hernandez failed to show she was

unable to leave her relationship.[2] *Parada*, 902 F.3d at 908. Similarly, the record supports the agency's determination that "the gang members' motive in extorting [Hernandez's] family members was to obtain money, unrelated to any protected ground."

Hernandez also has not presented any facts or arguments that undermine the BIA's determination that she failed to "establish that it is more likely than not that, if returned to El Salvador, she will experience treatment that would rise to the level of torture" inflicted by public officials or individuals the government was unable or unwilling to control. Thus, she has not shown that she is entitled to relief under the CAT.

The petition for review is **DENIED**.

---

[2] Because we find that the agency reasonably determined that Hernandez was not a member of her proposed particularized social group, we need not address the propriety of that group. *But see Matter of A-B-*, 27 I. & N. Dec. 316 (Att'y Gen. 2018).

*Mirian Hernandez-De Santana*, No. 16-73955

PAEZ, Circuit Judge, concurring in part and dissenting in part.

Hernandez suffered years of physical, sexual, and psychological abuse at the hands of her husband.  Although she repeatedly tried to leave him, he employed threats of physical violence against Hernandez and her family to force her to continue the relationship.  Mystifyingly, the IJ characterized Hernandez's decisions to allow her husband to return home as "voluntary."  The BIA and now the majority seriously err in affirming that finding.  While our standard of review is deferential, "deference does not mean blindness."  *Li v. Ashcroft*, 356 F.3d 1153, 1158 (9th Cir. 2004) (en banc).  Because the evidence compels the conclusion that Hernandez was trapped in a cycle of domestic violence, unable to leave her relationship, I respectfully dissent.[1]

**1.**  The BIA concluded that Hernandez was not a member of her proposed particular social group—"married women in El Salvador who are unable to leave their relationship"—because she and her husband occasionally lived apart.  When properly construed "in light of the familiar dynamics of violent relationships," such temporary separations reflect unsuccessful attempts to leave an abuser.  *Hernandez v. Ashcroft*, 345 F.3d 824, 838 (9th Cir. 2003).

---

[1]  I agree with the majority's denial of Hernandez's gang-related claims for relief.

1

Hernandez's husband repeatedly beat, raped, and denigrated her; left for a period of weeks; and then forced her to resume the relationship with a combination of threats and promises that he would no longer abuse her.  Such cyclical behavior of battering, separation, and reconciliation is textbook domestic abuse.  As we have recognized:

> [A]lthough a relationship may appear to be predominantly tranquil and punctuated only infrequently by episodes of violence, abusive behavior does not occur as a series of discrete events, but rather pervades the entire relationship.  The effect of psychological abuse, coercive behavior, and the ensuing dynamics of power and control mean that the pattern of violence and abuse can be viewed as a single and continuing entity.

*Id.* at 836–37 (citations and quotation marks omitted).  Here, what may appear to an outside observer like two people freely entering, leaving, and then reinitiating a relationship was in fact a "continuing entity" of abuse, in which Hernandez's husband used periods of separation and reconciliation as tools to maintain control over her.  *Id.* at 837.

The BIA also reasoned that Hernandez was not "unable to leave" because, on one isolated occasion, a neighbor called the police on her husband, and Hernandez obtained a three-month restraining order.  In fact, the police (and the neighbor) only provided assistance in circumstances in which a *third party*, not Hernandez, was harmed.  At no time did the police arrest Hernandez's husband, detain him, or even bring him in for questioning.  *Cf. Navas v. I.N.S.*, 217 F.3d 646, 656 n.10 (9th Cir. 2000) (noting that even "arrests by police, without more,

2

may not be sufficient to rebut claims that the government is unable or unwilling to stop persecutors, especially where the punishment may amount to no more than a slap on the wrist") (citations and quotation marks omitted). Further, after the three-month restraining order expired, Hernandez's husband resumed the abuse. Hernandez was afraid to seek a second restraining order because her husband threatened to take away her son if she did so. *See Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1058 (9th Cir. 2006) (holding that victims of private violence need not have engaged the authorities, where doing so would "have subjected [them] to further abuse").

Finally, the BIA concluded that because Hernandez received help from her family, she was not "unable" to leave the relationship. In fact, the record reflects that Hernandez's nuclear family moved to the United States, leaving her alone in El Salvador, and her extended family refused to help her because "they [did not] want to get involved in the marriage life of a person."

In sum, the evidence compels the conclusion that, despite numerous attempts, Hernandez was unable to leave her relationship. Accordingly, I would grant the petition with respect to the asylum and withholding of removal claims and remand to the BIA to address the remaining elements of those claims, as well as the effect, if any, of the Attorney General's decision in *Matter of A-B-*, 27 I. & N. Dec. 316 (Att'y Gen. 2018), on Hernandez's eligibility for relief.

**2.** I would also grant the petition with respect to Hernandez's CAT claim because the record compels the conclusion that the police acquiesced in her husband's torture. The police never arrested or even questioned Hernandez's husband, despite having knowledge of at least some of the abuse. *See Navas*, 217 F.3d at 656 n.10. Moreover, the record is replete with evidence that El Salvador fails to protect victims of domestic violence and rape, including a country conditions report that indicates the nation's domestic violence and rape laws are "not effectively enforced" and "[a] large portion of the population consider[s] domestic violence socially acceptable[.]" *Aguilar-Ramos v. Holder*, 594 F.3d 701, 705 n.6 (9th Cir. 2010) ("Country reports are accorded special weight in removal proceedings."). Thus, I would grant the petition with respect to the CAT claim and remand for further proceedings.

4