NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 24 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ANA MARINA RIVERA-MONTENEGRO, <br><br> Petitioner, <br><br> v. <br><br> JEFFREY A. ROSEN, Acting Attorney General, <br><br> Respondent. | No.    19-70548 <br><br> Agency No. A206-895-204 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 11, 2020
San Francisco, California

Before:  BOGGS,[**] M. SMITH, and BENNETT, Circuit Judges.

Petitioner Ana Rivera-Montenegro seeks review of the decision of the Board

of Immigration Appeals (BIA), which affirmed the Immigration Judge's (IJ) denial

of her application for asylum, withholding of removal, and relief under the

Convention Against Torture (CAT).  Rivera-Montenegro contends that the BIA

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

committed legal error with respect to her asylum and withholding-of-removal claims. Specifically, she argues that the BIA failed to undertake a mixed-motives analysis in determining whether she had established that the gang extortion she experienced was motivated in part by her status as a single female and member of numerous single female head of household social groups.[1] In addition, Rivera-Montenegro argues that the BIA erred by failing to consider the entire record when it denied her claim for CAT relief. We have jurisdiction under 8 U.S.C. § 1252, and we grant the petition for review with respect to Rivera-Montenegro's asylum and withholding-of-removal claims, deny it with respect to her CAT claim, and remand.

Rivera-Montenegro is a 34-year-old native and citizen of El Salvador, who fled to the United States with her now twelve-year old daughter following repeated gang harassment and extortion. Her application stated: "I was threatened by the gang, Mara 18, who targeted me because I was a single mother and business owner and I lived alone with my seven-year-old daughter. I was forced to pay '[la] renta', but when I could no longer afford it, they threatened to harm my daughter and me,

---

[1] Rivera-Montenegro asserted membership in the following social groups: (1) Salvadoran female heads of household; (2) Salvadoran female heads of household without male support; (3) single Salvadoran women without male support; (4) single Salvadoran mothers without male support; (5) single Salvadoran women small business owners; and (6) single Salvadoran women small business owners without male support.

so I fled." While in El Salvador, Rivera-Montenegro and her sisters experienced serious continuing abuse from men and gangs as they were growing up, ranging from sexual harassment to violent assaults. After her mother relocated to the United States, Rivera-Montenegro and her daughter moved to Soyapango, San Salvador. Her neighborhood there was also overrun with gang members. In 2012, she opened a "mini market" out of her home, selling products such as beans, rice, and chips. After she started her business, gang members came to her store and told her that she had to pay "la renta" of $150 per month in order to keep her business open. While no threats to physically harm her were initially conveyed, she considered "la renta" demand a threat in itself. Gang members returned every month to collect the payments, and when Rivera-Montenegro was unable to pay the full amount, they verbally accosted her, often with threatening gestures, name calling, vulgarities, and by telling her that she knew what they were capable of doing to her.

The gang members would point to Rivera-Montenegro's daughter and say, "She's your daughter," and tell Rivera-Montenegro that she knew what they were capable of doing to her daughter. On one occasion when she was unable to pay the full $150 amount, the gang specifically told her they were going to hurt her daughter and she "couldn't do anything against them." Rivera-Montenegro became very frightened that the gang was going to harm her daughter. She

3

thereafter moved her daughter away to live with her grandparents. The gang members returned to her home, and even inquired why she was "hiding [her daughter]," as they continued their verbal threats. Rivera-Montenegro closed her shop, fled El Salvador, and came to the United States.

The IJ denied Rivera-Montenegro's application for asylum and withholding of removal as well as her claim for CAT relief. In her oral decision, the IJ specifically found that "the gang used [Rivera-Montenegro's] status as an adult female who was living without a protective male in her household . . . to intimidate [her] in an effort to control her and an effort to make sure that she paid them the extortion that they wanted." But the IJ rejected this as a reason for granting relief, including because "using someone's status as a means of leverage is different than targeting a respondent because she is different in a way that is regarded as offensive. What is lacking here is any evidence of persecutory motive by the gang." The IJ also found that not just Rivera-Montenegro, but "[v]irtually everyone in El Salvador who is perceived as having money" is a victim of extortion. In the IJ's view, Rivera-Montenegro was unable to establish past persecution for asylum purposes because "she hasn't been able to establish that she was targeted because of one of the enumerated grounds in the asylum statute, rather than the fact that she was simply an attractive victim of crime."

4

With respect to Rivera-Montenegro's withholding-of-removal claim, the IJ held that, under the "mixed-motive standard," Rivera-Montenegro failed to show that the extortion was persecutory in nature. In the IJ's view, Rivera-Montenegro showed "no nexus between the harm and the proposed particular social groups." "[T]he extortion and the reprisals are criminal enterprises intended to increase the coffers of the gangs and increase their exertion of control over their territory and over the people living in their territory."

Finally, the IJ rejected Rivera-Montenegro's CAT claim. First, Rivera-Montenegro's experiences demonstrated that she is not likely to be tortured upon her return to El Salvador given that she failed to pay "la renta" in full on multiple occasions and was never physically harmed. Second, Rivera-Montenegro failed to show the government acquiesced in the alleged torture.

The BIA affirmed the IJ's decision on limited grounds. The BIA held that Rivera-Montenegro had failed to establish "a nexus between the harm she experienced and fears and a ground protected under the [INA]." The BIA explained that there was no clear error in the IJ's holding that "the perpetrators of the extortion and other related crimes were motivated by a desire to obtain money for their organization, *rather than* a desire to overcome a protected characteristic, such as a membership in the particular social group." (emphasis added). Accordingly, the BIA rejected Rivera-Montenegro's asylum and withholding-of-

5

removal claims.

The BIA also rejected Rivera-Montenegro's CAT claim. The BIA agreed with the IJ that Rivera-Montenegro "did not establish that she will more likely than not suffer harm rising to the level of 'torture' if returned to" El Salvador. The BIA also held that even if Rivera-Montenegro had proven that she would be tortured upon her return, she had failed to prove that the harm would have occurred with the consent or acquiescence of any public official in El Salvador.

We "review denials of asylum, withholding of removal, and CAT relief for substantial evidence." *Silva-Pereira v. Lynch*, 827 F.3d 1176, 1184 (9th Cir. 2016) (internal quotation marks and citations omitted). We review "determinations of mixed questions of law and fact for substantial evidence, and legal questions de novo." *Zumel v. Lynch*, 803 F.3d 463, 471 (9th Cir. 2015) (quotation marks and citation omitted). Here, because the BIA conducted a review of the record and law to consider the merits of Rivera-Montenegro's claim—adding its own analysis in affirming the IJ's reasoning—we review both decisions. *See Huang v. Holder*, 744 F.3d 1149, 1152 (9th Cir. 2014). However, "[i]n reviewing the decision of the BIA, we consider only the grounds relied upon by that agency. If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case." *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam).

We grant the petition for review with respect to Rivera-Montenegro's asylum and withholding-of-removal claims. A mixed-motives analysis is required where the record supports that multiple reasons could have motivated the alleged persecutory actions. *See Parussimova v. Mukasey*, 555 F.3d 734, 740–41 (9th Cir. 2009). We agree with Rivera-Montenegro's contention that the BIA committed legal error when it employed a binary analysis instead of a mixed-motives analysis, as evinced by its use of the phrase "rather than": "the perpetrators of the extortion and other related crimes were motivated by a desire to obtain money for their organization, rather than a desire to overcome a protected characteristic." The BIA provided no further analysis or explanation, leaving us to conclude that it did not consider the possibility that the gangs were motivated at least in part by Rivera-Montenegro's status as a single female and single female mother.[2]

We reject the government's position that there is no record evidence that supports that the gang was motivated even in part by any alleged protected ground. As we have noted, the IJ specifically found that the gang was not only aware of Rivera-Montenegro's status as a single woman and mother but used it as leverage and to intimidate her in their efforts to extort her. And, the IJ may have rejected Rivera-Montenegro's claim because she presented no evidence the gangs saw her

---

[2] This could potentially encompass all the social groups advanced by Rivera-Montenegro. *See* supra, n.1.

7

status as "offensive," but as the government correctly conceded at oral argument, Oral Argument at 21:15, *Rivera-Montenegro v. Barr*, 19-70548, there is no requirement that the gang have viewed Rivera-Montenegro's alleged protected group "as offensive," *see Ayala v. Sessions*, 855 F.3d 1012, 1021 (9th Cir. 2017) (finding there could be a nexus between extortion and the petitioner's membership in a particular social group, namely, her family, which was targeted because they owned hotels). Accordingly, we grant the petition for review as to Rivera-Montenegro's asylum and withholding-of-removal claims and remand to the BIA for further proceedings.[3]

We deny the petition for review with respect to Rivera-Montenegro's CAT claim because substantial evidence supports the holding that Rivera-Montenegro was unable to show consent or acquiescence of El Salvadoran public officials as to any alleged torture she would experience upon her return. The record indicates that while there is evidence that the government is having difficulty curbing gang activity, efforts to curb that activity are current and ongoing. Rivera-Montenegro therefore cannot meet the requisite standard required for CAT relief.

In addition, nothing compels reversal of the BIA's finding that the IJ did not

---

[3] Rivera-Montenegro advanced an alternative argument before the IJ and the BIA—that she was eligible for asylum and withholding of removal on the basis of an imputed political opinion. Neither the IJ nor the BIA addressed this argument. Because we are limited to the issues reached by the BIA, *see Andia*, 359 F.3d at 1184, we do not address this issue.

clearly err in her determination that Rivera-Montenegro had not established that she would likely suffer harm rising to the level of torture if returned to El Salvador. As the IJ correctly found, the gangs never physically harmed Rivera-Montenegro on the multiple occasions when she failed to pay "la renta" in full. This supported the IJ's conclusion that Rivera-Montenegro's "own experience" suggested that she had not met her burden of proof. The record does not compel a contrary conclusion.

**PETITION FOR REVIEW GRANTED in part; DENIED in part; REMANDED.**