NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

OCT 10 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

YIDI TANG,

Petitioner,

v.

PAMELA BONDI, Attorney General,

Respondent.

No.   15-73882

Agency No. A089-981-757

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 6, 2025**
Pasadena, California

Before:  GILMAN,*** GOULD, and KOH, Circuit Judges.

Yidi Tang, a native and citizen of China, petitions for review of a decision

by the Board of Immigration Appeals ("BIA") dismissing his appeal of an order by

an Immigration Judge ("IJ") that denied his application for asylum, withholding of

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel previously granted Respondent's Unopposed Motion to
Submit on the Briefs (Dkt. 52).

\*\*\* The Honorable Ronald Lee Gilman, United States Circuit Judge for
the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

removal, and protection under the Convention Against Torture ("CAT").  We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition for review.

1.  Substantial evidence supports the agency's adverse credibility determination and denial of Tang's claims for asylum and withholding of removal. The agency provided "specific and cogent" reasons that referred to "specific instances in the record" of inconsistencies.  *Silva-Pereira v. Lynch*, 827 F.3d 1176, 1185 (9th Cir. 2016) (quoting *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010)); *see also* 8 U.S.C. § 1158(b)(1)(B)(iii).  Inconsistencies can form the basis of an adverse credibility determination.  *See Li v. Garland*, 13 F.4th 954, 961 (9th Cir. 2021) (holding that "inconsistencies . . . supported by substantial evidence . . . are sufficient to support the adverse credibility determination"). Tang's testimony was inconsistent with his application for asylum in numerous ways, and the IJ provided an opportunity for Tang to address each of the inconsistencies.  Tang's responses to the IJ either failed to address the inconsistencies or introduced new inconsistencies into the record.

The inconsistencies concern Tang's life in China before he entered the United States.  First, in Tang's written asylum application, he stated:  "No matter how hard I tried, I always remained at the bottom of society."  But at the hearing before the IJ, Tang testified that he travelled both domestically and internationally for his job as a sales manager for a Chinese garment company.  When the IJ asked

2

Tang to reconcile these statements, Tang responded that he did not remember testifying that he travelled for work, and that he travelled abroad only for leisure.

Second, Tang testified that he lived with his parents in China, but Tang's asylum application listed a different home address than the one shown on his mother's Chinese identification card. When the IJ asked Tang to explain this discrepancy, Tang said that it was "impossible" for him and his mother to have the same address. The IJ asked why that was impossible. Tang responded: "I cannot explain that."

Finally, Tang's asylum application reports that after he and his wife divorced, he "lived a life of wandering around." But Tang testified that he and his children continued to live with his parents after the divorce. When the IJ asked Tang about this inconsistency, Tang responded that he meant that he wandered around because he had to bring his children to his workplace when his parents were not available. When his parents were available, Tang would bring his children to them for child care. This explanation is inconsistent with the statement in his asylum application that he had lost his job in China for reasons related to alleged religious persecution before the divorce and with his testimony that he lived with his parents.

These inconsistencies are sufficient to support an adverse credibility finding. *See* 8 U.S.C. § 1229a(c)(4)(C) ("[T]he immigration judge may base a credibility

determination on . . . the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.").

2.  Regarding the merits of Tang's religious-persecution claim, the IJ had no obligation to give Tang an opportunity to present additional evidence of church attendance.  Such an obligation arises only if the IJ first determines that an applicant's testimony is credible and persuasive, and then determines that corroborating evidence is needed.  *See Wang v. Sessions*, 861 F.3d 1003, 1008–09 (9th Cir. 2017) (noting a "sequential analysis" under which an applicant must first satisfy the IJ that the applicant's testimony is credible (quoting *Ren v. Holder*, 648 F.3d 1076, 1093 (9th Cir. 2011))).  Here, the IJ's finding that Tang's testimony was not credible is supported by substantial evidence.

3.  Tang does not challenge on appeal the BIA's denial of his claim for protection under the CAT.  That claim is therefore waived.  *See Lopez-Vasquez v. Holder*, 706 F.3d 1072, 1079–80 (9th Cir. 2013).

**PETITION DENIED.**

4