**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| RITA MARIA CARRION GARCIA, AKA Maria Burgos Martinez, AKA Maria Castillo, AKA Maralena Castillo Cruz, *Petitioner*, | No. 12-73781 Agency No. A201-280-642 |
| v. | OPINION |
| ERIC H. HOLDER, JR., Attorney General, *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 11, 2014—San Francisco, California

Filed April 16, 2014

Before: J. Clifford Wallace, M. Margaret McKeown,
and Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

**SUMMARY**[*]

**Immigration**

The panel denied a petition for review of the Board of Immigration Appeals' denial of withholding of removal and protection under the Convention Against Torture.

The panel held that substantial evidence supported the agency's adverse credibility determination based on petitioner's various lies to U.S. officials and to the district court judge, especially about her identity and country of origin, and the fact that she equivocated about her prior misrepresentations during her interview with the IJ.

The panel further held that the agency reasonably concluded that the corroborating documents petitioner submitted were not sufficient to rehabilitate her testimony, or to support her domestic violence based withholding of removal claim independently.

The panel deferred to the agency's determination that petitioner failed to qualify for CAT protection because the evidence did not compel the conclusion that she was the victim of domestic abuse.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Kari E. Hong, Supervising Attorney, and Mackenzie Houck and Marija Ozolins (argued), Student Counsel, Boston College Law School, Newton, Massachusetts, for Petitioner.

Tiffany L. Walters (argued), Ernesto H. Molina, Jr., Assistant Director, and Dana M. Camilleri, Trial Attorney, Office of Immigration Litigation; and Stuart F. Delery, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

**OPINION**

GOULD, Circuit Judge:

Petitioner Rita Maria Carrion Garcia, a native of the Dominican Republic, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the denial of her application for withholding of removal and protection under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252(a)(1), and we deny the petition for review.

**I**

Carrion Garcia gives the following account of her personal history. She was born in Santo Domingo in the Dominican Republic, where she lived with her parents until age twenty-two, when she moved to live separately with her children. Carrion Garcia's relationship with the children's father ended in 2001, but her children moved to the United

States to live with him in July 2010 after a robbery at Carrion Garcia's home.

Carrion Garcia met Ernesto Valdez in 2007, and they began dating. Their relationship became intimate in 2008, and she moved in with him in August 2010, after her children had already moved to the United States. Their relationship began to change in October 2010 when he started swearing at her, calling her a "prostitute," and spending time with new friends who were using drugs. Valdez began physically abusing Carrion Garcia in November 2010. The abuse was extreme. He would hit her and kick her in the ribs and stomach, and would rape and sodomize her when he returned home drunk.

Valdez threatened Carrion Garcia, saying that he would kill her if she left him or filed a police report against him. Ashamed of the abuse and concerned by the threats made by Valdez, Carrion Garcia did not consider filing a police report challenging his abuse. Carrion Garcia also knew of a neighbor who had been abused by her husband. When the neighbor called the police, her husband was only held in jail until the next day when he returned home and hit her again.

In January 2011, Carrion Garcia left Valdez to escape the abuse. She traveled to three separate locations in the countryside over the course of several weeks, staying with friends and family, and each time Valdez found her, apologized, and begged for her forgiveness. When she refused his entreaties to return with him to Santo Domingo, he became "furious," threatened her, and frightened her.

Following the third such encounter, Carrion Garcia returned to her mother's home, and her mother helped gather

money from relatives for Carrion Garcia to leave the Dominican Republic. Because Carrion Garcia had a six-month visa for Mexico, she decided to travel to Toluca, Mexico, with a friend. They later traveled to Nogales, Mexico, where Carrion Garcia was unable to find employment, and she decided to enter the United States.

Carrion Garcia was caught trying to enter the United States four times. She first entered the United States in May 2011 by crossing a border fence, and was caught by Customs and Border Protection ("CBP") officers. A CBP officer who spoke Spanish interviewed her, and she did not have difficulty conversing with him. She gave the CBP officer a false name, date of birth, and claimed that she was Mexican. Carrion Garcia later testified that she gave false information so that she would not be returned to Santo Domingo. She was removed to Mexico. Fifteen days later she crossed the border again and was immediately apprehended by CBP officers. Carrion Garcia gave the same false information to the Spanish-speaking CBP officer who interviewed her, and claimed that her parents were Mexican citizens. The same events transpired on her third attempted entry into the United States.

On her fourth attempt to enter the United States, Carrion Garcia was again apprehended by CBP officers, and interviewed by a Spanish-speaking officer. She gave again false identifying information, and was taken to Tucson where she was detained for three days. Carrion Garcia then appeared in U.S. District Court represented by a Spanish-speaking attorney. Carrion Garcia gave her attorney a false name and told her she was from Mexico. A Spanish interpreter was also present during her court appearance, and Carrion Garcia acknowledged that she understood both her

attorney and the proceedings. Although the district court judge told Carrion Garcia that she must tell the truth, Carrion Garcia gave the false name to the judge and said that she was from Mexico so that she would not be sent back to the Dominican Republic. Carrion Garcia was convicted of illegal reentry and spent thirty days in jail, after which she was returned to Nogales. However, a Mexican border patrol officer who reviewed her information discovered that Carrion Garcia was not from Mexico. She then claimed that she was from El Salvador, and was brought to the detention center in Eloy, Arizona.

After a "reasonable fear" interview, the Department of Homeland Security referred Carrion Garcia's withholding of removal application to an immigration judge ("IJ"). Carrion Garcia presented additional evidence to support her withholding of removal and CAT claims, including: her mother's affidavit, a police report filed by her mother on June 2, 2012, and an affidavit "from a third person who resided in the Dominican Republic" and who now lives in New York. Also, Carrion Garcia submitted the expert testimony of Dr. Wayne Westhoff regarding family violence and women's health in the Dominican Republic. Dr. Westhoff testified that domestic violence in the Dominican Republic is widespread, and that police are "uninterested in being of assistance because of the cultural aspect of not interfering with domestic or family issues." A country report submitted by Carrion Garcia supports Dr. Westhoff's expert opinions. After a hearing and in consideration of the evidence presented, the IJ found that Carrion Garcia was not credible, and denied her application for withholding of removal and protection under the CAT. The BIA affirmed the denial of relief.

## II

We review factual findings, including adverse credibility determinations, for substantial evidence. *Shrestha v. Holder*, 590 F.3d 1034, 1048 (9th Cir. 2010). Factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Smolniakova v. Gonzales*, 422 F.3d 1037, 1044 (9th Cir. 2005). This standard is very deferential, requiring only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). Because the BIA affirmed the IJ's findings of fact while adding its own reasons, we review both decisions. *Chand v. INS*, 222 F.3d 1066, 1072 n.7 (9th Cir. 2000). We review questions of law *de novo*. *De Martinez v. Ashcroft*, 374 F.3d 759, 761 (9th Cir. 2004).

## III

We first address the adverse credibility determination made by the IJ and affirmed by the BIA, which affects both of Carrion Garcia's claims. After the enactment of the REAL ID Act, a trier of fact may base an adverse credibility determination on the "totality of the circumstances," including, for example, the applicant's responsiveness, consistency between written and oral statements, the internal consistency of those statements, and any inaccuracies or falsehoods "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." *Shrestha*, 590 F.3d at 1039–40 (quoting 8 U.S.C. §§ 1158(b)(1)(B)(iii)). The IJ "must provide a specific cogent reason for the adverse credibility finding," *Gui v. INS*, 280 F.3d 1217, 1225 (9th Cir.

2002) (internal quotation marks and citation omitted), but we will only overturn the IJ's conclusion when "the evidence compels a contrary result." *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003).

Here, substantial evidence supports the IJ's adverse credibility determination, which the BIA affirmed. The IJ based his determination mainly on two factors. The first was Carrion Garcia's various lies to U.S. officials and to the district court judge, especially about her identity and country of origin. The second was that she equivocated during her interview with the IJ. These factors are generally sufficient to support an adverse credibility determination. *See Don v. Gonzales*, 476 F.3d 738, 741 n.5 (9th Cir. 2007) ("Admission of prior dishonesty can support an adverse credibility determination.").

Although Carrion Garcia claims that she cannot remember whether the four CBP officials told her to tell the truth, it is evident that she understood that she was lying in each interview. She also lied to her attorney and to the district court judge, who had made it clear to Carrion Garcia that she was under oath.

Carrion Garcia argues that the nature of her withholding claim—based on physical and sexual abuse—did not sufficiently inform the IJ's and BIA's consideration of her falsehoods. *See Kebede v. Ashcroft*, 366 F.3d 808, 811 (9th Cir. 2004); *Paramasamy v. Ashcroft*, 295 F.3d 1047, 1052–53 (9th Cir. 2002) (describing the particular difficulties that many rape victims face in relating their assaults). However, the IJ did acknowledge her assertion that she gave false information to the CBP officers "for fear that she would be returned to the Dominican Republic." Although the IJ did not

explicitly refer to the sexual abuse, the record shows that he understood the situation and the nature of Carrion Garcia's alleged fears regarding the abuse. For example, he stated: "To be sure, the Court must take into account the context of her misrepresentations in assessing the weight to be given to the misrepresentations." These acknowledgments of Carrion Garcia's particular situation significantly undermine her assertion that the IJ and BIA did not properly take account of the difficulties associated with reporting sexual abuse.

Apart from her misrepresentations to the CBP officers and those made during the district court proceedings, the IJ's adverse credibility determination is also supported by her equivocations during the interview, which the IJ called "a substantial basis for finding her not credible." Carrion Garcia argues that she was not making denials or equivocations, but rather that "she was forthright about her prior misrepresentations." But while the record might possibly be interpreted in that way, it falls far short of compelling the conclusion that Carrion Garcia was forthright. Carrion Garcia stated repeatedly that the CBP officers asked her for "name, date of birth, and just common questions . . . and that's it." But once the IJ pointed out that CBP officers are also required to ask about potential grounds for asylum or other discretionary relief, she claimed that she did not remember whether she had been asked such questions. Beyond such equivocations, the IJ also noted that the additional "statements are critical portions of the Border Patrol interviews," and he seriously doubted that four separate officers on four separate occasions would omit the statements, and thought she should have remembered the statements that pertained so directly to her situation. This conclusion is reasonable and the record does not compel a different interpretation.

Carrion Garcia further asserts that she was not given "an opportunity to explain the inconsistencies on which [the IJ] would base her adverse credibility determination" as required by *Soto-Olarte v. Holder*, 555 F.3d 1089, 1092 (9th Cir. 2009). An IJ should give fair notice of inconsistencies in testimony or points on which the IJ thinks the witness is not being responsive. *See Joseph v. Holder*, 600 F.3d 1235, 1244–45 (9th Cir. 2010); *Soto-Olarte*, 555 F.3d at 1092. But here the record shows that the IJ continually asked questions to clarify what Carrion Garcia meant by her inconsistent answers, such as: "Are you telling me that none of the four officers told you that?" and "So you're telling me they did not say that, or that you don't remember whether they said it?" The IJ also explicitly asked Carrion Garcia about her misrepresentations to the CBP officers and to the district court. Carrion Garcia was given many opportunities to clarify or explain her inconsistent statements, but she did not do so. The principle that we voiced in *Soto-Olarte* is not applicable.

We hold that substantial evidence supports the IJ's and the BIA's adverse credibility determinations. Carrion Garcia suggests plausible alternatives to the IJ's conclusion. Yet she cannot show that the record compels a different interpretation, and that is fatal to her challenge to the adverse credibility determination.

## IV

To qualify for withholding of removal, an applicant must show a "clear probability" of future persecution. *Alvarez-Santos v. INS*, 332 F.3d 1245, 1255 (9th Cir. 2003). That persecution must be apparent from objective evidence, *Cardoza-Fonseca v. INS*, 767 F.2d 1448, 1453 (9th Cir.

1985), and must be "on account of" one of the statutorily enumerated grounds: race, religion, nationality, political opinion, or membership in a particular social group, *INS v. Elias-Zacarias*, 502 U.S. 478, 480 (1992). A petitioner carries the burden of persuading the fact finder that the evidence offered is credible. *Mejia-Paiz v. INS*, 111 F.3d 720, 722 (9th Cir. 1997).

Substantial evidence supports the IJ's and the BIA's denial of relief under withholding of removal because Carrion Garcia cannot overcome the adverse credibility determination. The IJ considered the additional corroborating documents presented by Carrion Garcia and found them "insufficient to rehabilitate [Carrion Garcia's] testimony" because the preparers, her mother and the man from the Dominican Republic living in New York, were not available for cross examination and the authenticity of the documents relied on Carrion Garcia's discredited testimony. These documents do not reveal any independent knowledge of Carrion Garcia's alleged abuse. The IJ and BIA reasonably concluded that the documents were not sufficient to rehabilitate Carrion Garcia's testimony, or to support a withholding of removal claim independently. The record does not compel a conclusion to the contrary and so her claim for withholding of removal fails.

## V

Finally, we turn to Carrion Garcia's claim that she is entitled to protection under the CAT. The CAT "provides that a signatory nation will not expel, return . . . or extradite a person to another country where there are substantial grounds for believing that he would be in danger of being subjected to torture." *Al-Saher v. INS*, 268 F.3d 1143, 1146

(9th Cir. 2001) (internal quotation marks and citation omitted) (omission in original), *amended by* 355 F.3d 1140 (9th Cir. 2004). To qualify for CAT relief, an applicant must establish that "he [or she] is more likely than not to suffer intentionally-inflicted cruel and inhuman treatment" if removed. *Nuru v. Gonzales*, 404 F.3d 1207, 1221 (9th Cir. 2005) (citation omitted).

An adverse credibility determination does not, by itself, necessarily defeat a CAT claim, *Kamalthas v. INS*, 251 F.3d 1279, 1282–83 (9th Cir. 2001), because CAT claims are "analytically separate" from claims for withholding of removal. *Id*. at 1283. Rather, in determining whether a petitioner will more likely than not be tortured if returned to his or her home country, "all evidence relevant to the possibility of future torture shall be considered." 8 C.F.R. § 1208.16(c)(3). *Kamalthas* only requires that a petitioner have the opportunity to introduce additional "documentary evidence of torture," and that the IJ and BIA consider all the evidence presented. *Almaghzar v. Gonzales*, 457 F.3d 915, 921–22 (9th Cir. 2006). Contrary to Carrion Garcia's assertion, we do not require that "the BIA . . . discuss each piece of evidence submitted." *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). Unless clear indications exist that the IJ or BIA did not consider the documentary evidence, general language that the agency "considered all the evidence before [it]" is sufficient. *Id*. at 771 (quoting *Almaghzar*, 457 F.3d at 922) (alteration in original).

Nothing demonstrates that the BIA neglected to consider all of the evidence before it. Carrion Garcia's adverse credibility determination undermines both her own testimony and the external evidence reliant on it, including most of the police report filed by her mother, her mother's affidavit, and

the affidavit of the New York man familiar with her situation, all of which were derived from her own assertions. None of these sources shows independent, first-hand knowledge of Carrion Garcia's alleged domestic abuse, and Carrion Garcia submitted no independent corroborating evidence such as medical records, police investigative reports or witness statements. In circumstances such as these, the BIA's general language that "there is no evidence in the record that the applicant was ever tortured in the Dominican Republic, or that she faces a clear probability of torture" is sufficient to demonstrate that all evidence was considered. To say that there is "no evidence in the record" clearly implies that the BIA has looked at all of the evidence in the record. Dr. Westhoff's expert testimony and the country report, although supporting the conclusion that domestic violence is a widespread problem in the Dominican Republic, do not compel the conclusion that Carrion Garcia in particular was a victim. As such, we defer to the IJ and BIA's conclusion that relief under the CAT is unavailable. *See Almaghzar*, 457 F.3d at 922–23.

## VI

Carrion Garcia did not show that the record compels the conclusion that the IJ and BIA erred in reaching the adverse credibility determination. Because her testimony and the evidence reliant on it are not credible, and she presents no independent evidence corroborating that she was a victim of the alleged domestic abuse at the hand of Valdez, we conclude that the denial of relief by the BIA was permissible under the law, and we decline to remand for further proceedings.

**PETITION FOR REVIEW DENIED.**