**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LIXIANG HUANG, | No. 11-73306 |
| Petitioner, | Agency No. A099-397-580 |
| v. | |
| LORETTA E. LYNCH, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 3, 2016**
Pasadena, California

Before: PREGERSON, WARDLAW, and HURWITZ, Circuit Judges.

Petitioner Lixiang Huang appeals the BIA's denial of his petition for asylum and withholding of removal. Huang is a Chinese immigrant from Taishan City, in the Guangdong Province. According to Huang, in China, he helped his mother practice Falun Gong after it was banned by the Chinese government in 1999.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Huang took his mother by bike to and from her Falun Gong meetings, and stood guard while she was there. In May 2003, when Huang arrived to pick his mother up at a Falun Gong meeting place, police arrested Huang, his mother, and her fellow practitioners. Police accused Huang of aiding and covering up illegal Falun Gong activity and detained him for two days. They threatened Huang with three years of detention if he were caught facilitating the practice of Falun Gong again.

Huang continued to help his mother, and in November 2004, the two barely avoided being caught in a raid at the house where Huang's mother had been practicing Falun Gong. After the raid, law enforcement continued looking for Huang and his mother. Upon learning that the police were waiting at their home to arrest them, Huang and his mother went into hiding with a relative in the countryside. In 2004, after a Neighborhood Committee cadre showed up at his relative's home, Huang obtained a passport and fled to Mexico and then to the United States.

Huang timely filed an application for asylum and withholding of removal. The IJ denied his application, finding that Huang had not provided credible testimony to meet his burden of proof for his asylum and withholding of removal claims. The IJ found that Huang was non-responsive and that there were inconsistencies in his testimony bearing on his credibility. The BIA affirmed.

We review adverse credibility determinations for substantial evidence. *Garcia v. Holder*, 749 F.3d 785, 789 (9th Cir. 2014). "We may reverse factual determinations only when 'any reasonable adjudicator would be compelled to conclude to the contrary' based on the evidence in the record." *Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014) (quoting 8 U.S.C. § 1252(b)(4)(B)). When, as here, the BIA adopts the reasoning of the IJ, we review the IJ's decision. *Li v. Holder*, 559 F.3d 1096, 1102 (9th Cir. 2009).

"Even where there is no due process violation, faulty or unreliable translations can undermine the evidence on which an adverse credibility determination is based." *He v. Ashcroft*, 328 F.3d 593, 598 (9th Cir. 2003); *see also Ren v. Holder*, 648 F.3d 1079, 1088 n.7 (9th Cir. 2011) (citing *He* in a case governed by the REAL ID Act). What's more, we have also stated that "unresponsive answers by the witness provide circumstantial evidence of translation problems." *Perez-Lastor v. I.N.S.*, 208 F.3d 773, 778 (9th Cir. 2000).

The record suggests that what the IJ construed as non-responsiveness was actually Huang's inability to understand and respond to the questions posed to him

at his immigration hearing.[1]  Huang was unable to satisfactorily answer even his

own lawyer's questions.  As the IJ pointed out, "Frequently Government counsel,

the Immigration Judge, and even [Huang's] own counsel had to repeat questions to

obtain an answer that was responsive."  Huang's difficulty in effectively

responding to his counsel's questions shows Huang's inability to understand what

was being asked.  It was of course in Huang's best interest to answer his counsel's

questions as accurately and comprehensively as possible.  His failure to do so

constitutes "circumstantial evidence of translation problems."  *Perez-Lastor*, 208

F.3d at 778.

---

[1] Huang was provided Cantonese-speaking interpreters during his removal proceedings.  Huang was born in the City of Taishan in February 1968 and lived there through January 2005, for almost forty years.  Although his asylum application lists Cantonese as his native language, it is likely that Huang speaks a dialect of Chinese related to, but distinct from Cantonese, known as Taishan or Toisan.  Indeed, Taishan is conventionally classified along with Cantonese, even though the two dialects belong to different subgroups of the Yue dialect. *See* Cecilia Szeto, *Testing Intelligibility Among Sinitic Dialects*, Proceedings of ALS2K, the 2000 Conference of the Australian Linguistic Society, at 4 (linguistic study, which found that Cantonese speakers without a special familiarity with Taishanese could only understand 31.3% of Taishanese sentences), http://alsasn.server322.com/proceedings/als2000/szeto.pdf.  Although Cantonese and Taishan are related, they are "not entirely mutually intelligible." *See, e.g.*, Teresa M. Cheng, *The Phonology of Taishan*, 1 J. Chinese Linguistics 256, 256 (1973), *available at* http://www.jstor.org/stable/ 23749797 (Although Taishanese is a Cantonese dialect and "bears great resemblance" to Cantonese, the two are "not entirely mutually intelligible."). Huang and his Cantonese interpreter very well may have been speaking distinct, mutually unintelligible Chinese dialects.

4

Because the IJ mischaracterized Huang's testimony as deliberately non-responsive, it was unreasonable for the IJ  to use that testimony to support an adverse credibility determination.  We grant Huang's petition for review of his asylum and withholding of removal claims, and we remand to the BIA.

The panel retains jurisdiction.

**The petition for review is GRANTED and REMANDED.**