**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 30 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SERIJANTI KUSNANTO,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney
General,

Respondent.

No.    11-73445

Agency No. A088-127-717

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 13, 2018
San Francisco, California

Before:  WALLACE, BERZON, and CALLAHAN, Circuit Judges.

Petitioner, Serijanti Kusnanto ("Kusnanto"), a native and citizen of

Indonesia, petitions for review of the Board of Immigration Appeal's ("BIA")'s

order dismissing her appeal from an Immigration Judge's ("IJ")'s denial of asylum,

withholding of removal, and protection under the Convention Against Torture

("CAT").  We review adverse credibility determinations and the denial of asylum,

        *        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

withholding of removal, and protection under the CAT for substantial evidence. *Chawla v. Holder*, 599 F.3d 998, 1001 (9th Cir. 2010) (adverse credibility determination); *Baghdasaryan v. Holder*, 592 F.3d 1018, 1022 (9th Cir. 2010) (asylum and withholding of removal); *Silaya v. Mukasey*, 524 F.3d 1066, 1070 (9th Cir. 2008) (Convention Against Torture). We have jurisdiction pursuant to 8 U.S.C. § 1252(a), and we deny the petition for review.

1. Under the REAL ID Act, which applies to Kusnanto's application, "there is no presumption that an applicant for relief is credible." *Huang v. Holder*, 744 F.3d 1149, 1152 (9th Cir. 2014). The IJ's credibility determination is based on the "totality of the circumstances, and all relevant factors," including the applicant's "candor, or responsiveness," the "consistency between the applicant's . . . written and oral statements," and "the consistency of such statements with other evidence of record." 8 U.S.C. § 1158(b)(1)(B)(iii). "[A]ny inaccuracies, omissions of detail, or inconsistencies found by the IJ, regardless of whether they go to the 'heart' of a petitioner's claim, may support an adverse credibility finding." *Tamang v. Holder*, 598 F.3d 1083, 1093 (9th Cir. 2010).

Substantial evidence supports the IJ's adverse credibility determination based on two omissions from Kusnanto's original asylum application that were added later via amendment. The IJ concluded that Kusnanto failed to mention the two incidents that occurred in 2006 to the asylum officer, and that such an

2

omission was suspicious, especially considering the two incidents are "the strongest evidence in support of an otherwise weak asylum claim." These two incidents tell a more compelling story of persecution than the events discussed in Kusnanto's original asylum application. Omissions that tell a "much different and more compelling story of persecution than [the] initial application" can properly form the basis for an adverse credibility finding. *Silva-Pereira v. Lynch*, 827 F.3d 1176, 1185-86 (9th Cir. 2016). Because the evidence does not compel a contrary conclusion, we decline to reverse the IJ's credibility determination. *Zi Lin Chen v. Ashcroft*, 362 F.3d 611, 617 (9th Cir. 2004) (holding adverse credibility determinations are reversed only if the evidence compels a contrary conclusion).

2. Even if Kusnanto were credible, substantial evidence supports the agency's determination that she failed to establish eligibility for asylum. An applicant bears the burden of establishing that she is eligible for asylum. 8 U.S.C. § 1158(b)(1)(B); 8 C.F.R. § 208.13(a). *See also Ali v. Holder*, 637 F.3d 1025, 1029 (9th Cir. 2011). To qualify for asylum, an applicant must show that she is a refugee—one who is unable or unwilling to return to her home country because of persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Ling Huang v. Holder*, 744 F.3d 1149, 1152 (9th Cir. 2014). Persecution is "an extreme concept that does not include every sort of treatment our society regards as

offensive." *Nagoulko v. INS*, 333 F3d. 1012, 1016 (9th Cir. 2003).

Kusnanto failed to establish that she was the victim of past persecution. Kusnanto alleged a series of incidents in 1999 or before where she was harassed and pushed, and a single incident in 1999 involving a hit and run where she alleged she was almost killed. She then alleged, via amendment, two incidents that occurred seven years later in 2006, (1) where she was robbed at knifepoint by four Muslim men, and (2) where she was threatened by her neighbors because of her daughter's immigration to the United States. These incidents, though reprehensible, do not rise to the level of persecution. *See Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003) (holding that harassment, threats, and one beating unconnected with any particular threat did not compel a finding of past persecution). Kusnanto has failed to present substantial evidence that these incidents compel a finding of past persecution. *See Fisher v. INS*, 79 F.3d 955, 961-62 (9th Cir. 1996) (en banc) (persecution generally does not include mere discrimination, as offensive as it may be).

In the absence of past persecution, an applicant still may be eligible for asylum based on a well-founded fear of future persecution, 8 C.F.R. § 1208.13(b), which is subjectively genuine and objectively reasonable. *See Rusak v. Holder*, 734 F.3d 894, 896 (9th Cir. 2013). Kusnanto failed to establish that she has a well-founded fear of persecution if she were returned to Indonesia. Kusnanto focuses

4

her argument on the IJ's disfavored group analysis. It is uncontested that ethnic Chinese and Christians in Indonesia are disfavored groups. *Sael v. Ashcroft*, 386 F.3d 922, 927 (9th Cir. 2004); *see also Tampubolon v. Holder*, 610 F.3d 1056, 1060–62. However, mere membership in a disfavored group does not demonstrate a well-founded fear of persecution. In determining whether an applicant has established a well-founded fear of persecution based on membership in a disfavored group, "this court will look to (1) the risk level of membership in the group … and (2) the alien's individual risk level…." *Mgoian v. INS*, 184 F.3d 1029, 1035 n.4 (9th Cir. 1999). These two factors work in tandem—the more serious and widespread the threat to the group, the less individualized the threat of persecution needs to be. *Sael*, 386 F.3d at 925. Because the evidence of record indicates that ethnic Chinese Christians are not a severely disfavored group, Kusnanto must show some individualized threat of persecution. *Halim v. Holder*, 590 F.3d 971, 978 (9th Cir. 2009).

Kusnanto failed to present sufficient evidence of an individualized threat. The incidents that occurred in 1999, including the hit and run, as well as the robbery in 2006, are not enough to establish a fear of future persecution without additional evidence connecting them to Kusnanto's ethnicity and/or religion.[1]

---

[1] There is little evidence in the record that Kusnanto faced any discrimination, let alone persecution, based on her Christian religion. We read the BIA's inartful reference to disfavored groups as holding only that the IJ properly distinguished

5

Additionally, as noted previously, these incidents rise only to the level of harassment and discrimination. The threats by Kusnanto's neighbors in 2006, similarly fail to establish a fear of future persecution because, as the IJ noted, "no one has followed through on the threat or harmed anyone in the respondent's family relating to her daughter's request for asylum." Thus, substantial evidence supports the determination that the relative low individualized risk presented by Kusnanto, in combination with the general risk level of ethnic Chinese Christians as a group, was insufficient to establish a well-founded fear of persecution.

Finally, Kusnanto fails to establish that the persecution she suffered was committed by the government or by forces the government was either unable or unwilling to control. *See Navas v. INS*, 217 F.3d 646, 655–56 (9th Cir. 2000). Kusnanto offered three instances when the police were allegedly unwilling to control the alleged persecution—when she was robbed in 2006, when her daughter was sexually assaulted in 2004, and when she was hit by the motorcycles in 1999. However, the alleged robbery in 2006 is the only time when Kusnanto was directly asked for money in return for police services. The 2004 incident involved the police allegedly asking her daughter for money and in the 1999 hit and run incident, the record indicates that the police were notified but no prosecution

---

this case from *Tampubolon v. Holder*, 610 F.3d 1056, 1058 (9th Cir. 2010) (holding Christians in Indonesia are a disfavored group), rather than saying Chinese Indonesians are not a disfavored group.

6

resulted—not because the police asked for money, but rather because there were no direct eyewitnesses. The record indicates that the other incidents simply were not reported to the police. These two incidents where the police requested payment are not sufficient to establish acquiescence on the part of the government.

3. To qualify for withholding of removal, an applicant must demonstrate a clear probability of future persecution on account of one of the statutorily enumerated grounds. *Garcia v. Holder*, 749 F.3d 785, 791 (9th Cir. 2014). An applicant who fails to satisfy the lower standard of proof for asylum necessarily fails to satisfy the more stringent standard for withholding of removal. *See Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003). Because substantial evidence supports the IJ's denial of Kusnanto's asylum application, it necessarily follows that she has not carried her burden to establish eligibility for withholding of removal.

4. To receive CAT protection, Kusnanto must prove that it is "more likely than not" that she would be tortured if removed to Indonesia. 8 C.F.R. § 1208.16(c)(2). There is no evidence in the record that Kusnanto will be subject to torture if she were returned to Indonesia. Additionally the country conditions evidence does not demonstrate that it would be more likely than not that Kusnanto would be tortured if she were removed to Indonesia. For that reason substantial evidence supports the finding that Kusnanto failed to show that it is more likely

7

than not that she will be tortured if returned to Indonesia.

**PETITION DENIED.**

*Kusnanto v. Sessions*, No. 11-73445

Berzon, J., dissenting:

I would grant the petition for several, independently adequate reasons.

First, as to the adverse credibility determination, that determination was based in part on a plain factual error. The IJ found it "suspicious that [Kusnanto] failed to mention" the two incidents that occurred in 2006 — the robbery at knife point and the threats to her daughter — to her asylum officer. But Kusnanto specifically testified that she *did* tell the asylum officer about the robbery incident. Nothing in the IJ or BIA opinions disputed Kusnanto's credibility as to that statement. Having misstated the record, the BIA had no occasion to explain why Kusnanto's explanation of the omission from the application — namely, that her lawyer failed to include it although told — was not credible. The proper course is to grant the petition and apply the "ordinary 'remand' rule" for the agency to reexamine Kusnanto's credibility free from error. *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam); *see Soto-Olarte v. Holder*, 555 F.3d 1089, 1093–96 (9th Cir. 2009); *see also Castaneda-Castillo v. Gonzales*, 488 F.3d 17, 24–25 (1st Cir. 2007) (en banc) ("If the agency decision is flawed by . . . unsustainable subsidiary findings, or doubtful reasoning, remanding to give the agency an opportunity to cure the error is the *ordinary* course."); *Li v. INS*, 453 F.3d 129, 136 (2d Cir. 2006) ("[W]hen we find fault with an adverse credibility

finding, we . . . ordinarily will 'remand to the agency for additional explanation or investigation.'").

Second, the IJ found that "there is little to suggest that the Indonesian government cannot or will not provide her protection." Again, that finding is directly contradicted by Kusnanto's testimony. To establish past persecution, an applicant must show that the persecution was committed by the government or by forces the government is "unable or unwilling" to control. *See Navas v. INS*, 217 F.3d 646, 655–56 (9th Cir. 2000). In cases of non-governmental persecution, "we consider whether an applicant reported the incidents to police, because in such cases a report of this nature may show governmental inability to control the actors." *Baballah v. Ashcroft*, 367 F.3d 1067, 1078 (9th Cir. 2004). Kusnanto described three instances in which police refused to help. First, when her daughter tried to report sexual harassment to the police, the police demanded a 25,000 rupiah "administration fee" to create a police report and refused to investigate. Second, after Kusnanto was hit by a motorcycle, her employer reported the incident to the police, who again said they could not do anything because there were no witnesses. Third, after Kusnanto was robbed at knifepoint, she went to the police, who told her "if you don't have any extra money then I won't be able to help you, I cannot help you." And Kusnanto stated that, in other instances, she had not sought or obtained the assistance of authorities because police in Indonesia ask

for "advance payment" or bribes from Chinese people. These statements by Kusnanto were not discredited; they were just ignored. Under our case law, these explanations should have been sufficient to satisfy the "unable or unwilling" element for past persecution. *Cf. Afriyie v. Holder*, 613 F.3d 924, 931–34 (9th Cir. 2010) (holding that the police's demand for bribes supported the conclusion that the police were "unable and unwilling" to protect the petitioner); *Mashiri v. Ashcroft*, 383 F.3d 1112, 1121 & n.5 (9th Cir. 2004) (holding that the police's failure to conduct proper investigations demonstrated that the government was unable or unwilling to control persecution).

Third, as to the disfavored group analysis, what the BIA held was that it "cannot find error in the Immigration Judge's conclusion that the respondent is *not* a member of a disfavored group" (emphasis added). As the government acknowledged during argument, and as the majority recognizes, our case law is squarely to the contrary. *See Sael v. Ashcroft*, 386 F.3d 922, 927 (9th Cir. 2004) ("Indonesia's ethnic Chinese minority is at least a 'disfavored group.'").

Rather than attempt to defend the BIA's holding, the government instead maintained in its briefing and at argument that Indonesia's ethnic Chinese minority is not "*severely* disfavored" (emphasis added), and that therefore, under *Halim v. Holder*, 590 F.3d 971, 977–80 (9th Cir. 2009), as the degree of disfavor is relatively low, the level of individualized targeting must therefore be greater. But

"we cannot assume that the BIA considered factors that it failed to mention in its decision." *Mattis v. INS*, 774 F.2d 965, 967 (9th Cir. 1985). "If the BIA issues a written opinion, it is *that opinion* which is under review," *Morgan v. Mukasey*, 529 F.3d 1202, 1206 (9th Cir. 2008) (emphasis added), not what the government's lawyers argued. *Cf. Sec. & Exch. Comm'n v. Chenery*, 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").

The BIA did not conduct any disfavored group analysis at all, and therefore did not assess — applying any standard — whether Kusnanto had shown sufficient individualized risk. Where the BIA entirely fails to conduct the required disfavored group individualized risk analysis, "we must remand to the BIA for it to determine whether the combination of disfavored group evidence and evidence of individualized risk is sufficient to establish a clear probability that petitioners will be persecuted if removed to Indonesia." *Tampubolon v. Holder*, 610 F.3d 1056, 1062 (9th Cir. 2010). That is what we must do here, rather than creating a rationale the BIA did not adopt.

For all these reasons, I strongly dissent from the denial of Kusnanto's

petition for review on her withholding claim.[1]

---

[1] I concur in the majority's disposition as to Kusnanto's failure to show eligibility for protection under the Convention Against Torture.