NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 9 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| INGRIS SELENA HERNANDEZ VASQUEZ; ROMEL DAVID HERNANDEZ VASQUEZ, <br><br> Petitioners, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No. 18-70824 <br><br> Agency Nos. A208-542-371 <br> A208-542-370 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 11, 2020
Pasadena, California

Before: BEA, THAPAR,** and COLLINS, Circuit Judges.
Concurrences by Judge Bea and Judge Collins

Petitioners Ingris Selena Hernandez Vasquez ("Hernandez") and her minor

son Romel David Hernandez Vasquez ("Romel") are natives and citizens of

Honduras who petition for review of the decision of the Board of Immigration

Appeals ("BIA") affirming the order of the Immigration Judge ("IJ") denying their

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

** The Honorable Amul R. Thapar, United States Circuit Judge for the U.S. Court
of Appeals for the Sixth Circuit, sitting by designation.

applications for asylum, withholding of removal, and protection under the Convention Against Torture ("Torture Convention").[1]  We have jurisdiction under § 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252.  We review legal questions de novo and the agency's findings of fact for substantial evidence.  *Hamazaspyan v. Holder*, 590 F.3d 744, 747 (9th Cir. 2009).  Under the latter standard, the agency's factual findings must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  We deny the petitions.

## I

Petitioners contend that the notices to appear served on them by the Department of Homeland Security were defective, because they did not include the date and time of the hearing and because they apparently listed the wrong location.  These defects did not preclude jurisdiction from vesting in the Los Angeles Immigration Court when those documents were filed there, especially where (as here) the correct information was supplied in a subsequent notice served on Hernandez prior to the scheduled hearing.  *See Aguilar Fermin v. Barr*, 958 F.3d 887, 894–95 (9th Cir. 2020); *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019).

---

[1] Romel asserts a derivative asylum claim based on his mother's application. Although he has also filed his own application for all three forms of relief, that application relies upon the same facts as those asserted in his mother's application.

## II

To be eligible for asylum, an applicant must show that he or she was persecuted, or has a well-founded fear of persecution, "on account of race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. § 1101(a)(42)(A); *see also id*. § 1158(b)(1)(B)(i) (applicant must show that one of these protected grounds "was or will be at least one central reason for persecuting the applicant"). "To qualify for withholding of removal, an applicant must show a 'clear probability' of future persecution" on account of one of the same protected grounds. *Garcia v. Holder*, 749 F.3d 785, 791 (9th Cir. 2014) (citation omitted). However, for a withholding claim, the protected ground need only be "a reason" for the persecution, and not (as with asylum) "one central reason." *Barajas-Romero v. Lynch*, 846 F.3d 351, 358–59 (9th Cir. 2017). We conclude that substantial evidence supports the agency's conclusion that neither Petitioner established the requisite causal nexus as to any of their proposed social groups, and their applications for asylum and withholding of removal were therefore properly denied.

### A

In asserting that she had established past persecution, Hernandez relied on (1) the brutal sexual assault and rape committed by a gang member against her in 2012, when she was only 15; and (2) extortionate demands and threats made by

3

Mara Salvatrucha ("MS-13") gang members in 2015. Substantial evidence supports the agency's determination that Hernandez's membership in her asserted social groups was not a reason for either type of mistreatment by the gang.

The agency permissibly concluded, based on the evidence in the record, that Hernandez was "the victim of a horrible random act of violence" when she was raped in 2012 and that the perpetrator was not motivated by her membership in her proposed social groups—*viz.*, "Honduran women," "Honduran women lacking effective familial protection," and "Hondurans with knowledge of criminal activity perpetrated by gang members." The fact that Hernandez did not know the perpetrator supports the inference that the rapist also knew little about her, including her nationality, her lack of familial protection, or her knowledge of gang criminal activity.[2] *See Ochave v. INS*, 254 F.3d 859, 865–66 (9th Cir. 2001) (evidence that rapists did not know victim before the attack provided substantial evidence for agency conclusion that rape lacked a nexus to a protected ground). At oral argument, Petitioner argued that the proposed social group of "Honduran women" should be understood to mean "women who are physically present in Honduras" and that her attacker selected her at least in part because she was a woman who happened to be in Honduras. Petitioner, however, cannot propose a

---

[2] Indeed, as to the third proposed social group, there is little evidence to support the conclusion that, prior to the 2012 assault, Hernandez had any knowledge of gang criminal activity.

new particular social group on appeal that was not presented in the proceedings below, *see Tijani v. Holder*, 628 F.3d 1071, 1080 (9th Cir. 2010), and there is no indication in the record that Petitioner, the IJ, or the BIA ever viewed the relevant proposed social group as extending beyond women with Honduran nationality.

As to the 2015 extortionate threats against Hernandez, substantial evidence also supports the agency's conclusion that they lacked any causal nexus to Hernandez's membership in her three proposed social groups. Hernandez herself testified that the gang members who attempted to extort her "thought we had money" because of her family's clothing business. Indeed, when asked directly what the reason for the threats was, Hernandez responded, "Well, the threats were for the money." In concluding that the extortion was driven by criminal greed, rather than by Hernandez's membership in her proposed groups, the IJ relied on this testimony, as well as on country conditions evidence showing that gangs frequently extort Honduran businesses as a means of funding their criminal activities. We cannot say that the record compels a conclusion different from the agency's.

Given that Hernandez's past or feared harm lacked any causal nexus to a protected ground, the agency properly concluded that Hernandez had failed to establish that she was eligible for either asylum or withholding of removal.

**B**

We likewise conclude that substantial evidence supports the agency's conclusion that Romel did not establish a nexus between any past or feared harm and his membership in his two proposed social groups, namely, "members of [Hernandez's] immediate family" and "children fathered by gang members as a result of rape, whose birth is evidence of the criminal activity." As the BIA explained, although Romel was threatened in connection with the 2015 extortionate threats, "the record reflects that the gang members were motivated by their desire to enrich themselves and protect themselves." The BIA thus found that the gang members "were not threatening [Romel] because of his membership" in his proposed social groups. The record evidence does not compel a contrary conclusion. Indeed, Hernandez testified that the gang members threatened Romel as a means of getting money because they "knew we would give up the money to protect him."

**III**

Finally, we conclude that substantial evidence supports the agency's denial of relief under the Torture Convention. To qualify for such relief, "an applicant bears the burden of establishing that she [or he] will more likely than not be tortured with the consent or acquiescence of a public official if removed to her [or his] native country." *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1183 (9th Cir.

6

2020). The agency permissibly concluded that neither Petitioner had made that showing. As the BIA noted, Hernandez's mother and sister continued to live in another Honduran town, "an hour and a half away from their prior residence, without experiencing further problems." *See Maldonado v. Lynch*, 786 F.3d 1155, 1164 (9th Cir. 2015) (en banc) ("The IJ must consider all relevant evidence, including but not limited to the possibility of relocation within the country of removal."). And to the extent that country conditions indicate a general level of violence within Honduras, the agency permissibly determined that such evidence, even considered with the other record evidence, did not show a "probability of being singled out for torture" with the acquiescence of Honduran officials. *See Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) ("generalized evidence of violence and crime" in a country that "is not particular to Petitioners . . . is insufficient to meet th[e] standard" for showing that "it is more likely than not that they would be tortured if returned" to their home country).

The petitions for review are **DENIED**.

*Hernandez Vasquez v. Garland*, No. 18-70824

BEA, Circuit Judge, concurring:

I join my colleagues in denying the petitions for review of the decision of the Board of Immigration Appeals that these Petitioners are ineligible for asylum, withholding of removal, or relief under the Convention Against Torture. I write separately to explain that our holding does not, and indeed cannot, preclude the Attorney General from declining to enforce the final order of removal in this case as an exercise in prosecutorial discretion.

Shortly before the filing of our disposition, the Government and Petitioners moved jointly to refer the petitions for review to our circuit's mediation program. The joint motion explained that the Attorney General and the Department of Homeland Security have recently adopted new policies that permit the administrative closure of removal cases they view as low-priority and concentrate enforcement resources on removal proceedings they believe involve matters of national security, recent unauthorized arrivals, and aliens convicted of aggravated felonies or gang-related crimes. Joint Motion to Refer at 2 & n.1 (citing *Matter of Cruz-Valdez*, 28 I&N Dec. 326 (A.G. 2021), and Interim Guidance to OPLA Attorneys Regarding Civil Immigration Enforcement and Removal Policies and Priorities (May 27, 2021)). Given these new policies, Petitioners sought to use

mediation to "seek prosecutorial discretion, especially since Ms. Hernandez is now married to a U.S. citizen and [is] the mother of two U.S. citizen children." *Id.* at 3.

Neither referral to mediation nor any other action by this court is required for the Attorney General to exercise prosecutorial discretion by declining to enforce this particular order of removal. Article II assigns the President "The executive Power" to decide when and against whom to enforce federal law and the solemn duty to "take Care that the Laws be faithfully executed." U.S. CONST. art. II, §§ 1, 3; *In re Aiken Cty.*, 725 F.3d 255, 262–66 (D.C. Cir. 2013) (Kavanaugh, J.) ("The Presidential power of prosecutorial discretion is rooted in Article II …. Prosecutorial discretion encompasses the Executive's power to decide whether to initiate charges for legal wrongdoing and to seek punishment, penalties, or sanctions against individuals or entities who violate federal law."); *see also Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion.").

The Supreme Court has specifically recognized that "the Attorney General's discrete acts of 'commenc[ing] proceedings, adjudicat[ing] cases, [and] execut[ing] removal orders'" are exercises in prosecutorial discretion "which represent the initiation or prosecution of various stages in the deportation process." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) (quoting 8 U.S.C.

§ 1252(g)).  "At each stage the Executive has discretion to abandon the endeavor … for humanitarian reasons or simply for its own convenience."  *Id.* at 483–84.  The decision not to proceed is unreviewable by the courts.  Our involvement is at an end when the Attorney General decides a particular violation of the immigration laws is not worth pursuing through the immigration courts and defending before our court on a petition for review.  *See* 8 U.S.C. § 1252(a) (authorizing judicial review of "final order[s] of removal"); *id.* § 1252(b)(3)(A) (naming the Attorney General as respondent); *id.* § 1252(a)(2)(b), (g) (limiting judicial review of discretionary decisions by the Attorney General).

Whether the Attorney General will exercise prosecutorial discretion to the benefit of these Petitioners is outside our purview.  What matters here is that our denial of these petitions for review has no bearing on the Executive's inherent power and responsibility to judge for itself whether proceeding with removal in this particular case or not is most faithful to the execution of the laws writ large.

*Hernandez Vasquez v. Garland*, No. 18-70824

COLLINS, Circuit Judge, concurring:

The issuance of our decision in this matter moots the parties' belated request to send this long-pending case to court-sponsored mediation. We therefore have no issue before us concerning the scope of Executive discretion, and I express no view on any of the matters discussed in Judge Bea's concurrence.